(20 Misc. Rep. 645.)

## HESSLER v. SCHAFER.

(Supreme Court, Special Term, Onondaga County. July, 1897.)

1. LEASES—RIGHT OF LESSOR TO IMPROVE.

    Plaintiff and defendant, partners, ·dissolved partnership, plaintiff taking the business and leasing the store, a one-story building, from defendant. The lease provided that lessor should be permitted "to enter the premises at all reasonable hours to examine or make such repairs and alterations therein as shall be necessary, or as he may consider necessary, for the preservation or improvement thereof." *Held*, that lessor had no right to build two stories on said premises, and interfere with plaintiff's signs, and injure his business by conducting a rival business in the stories added.

2. SAME—DAMAGES—INJUNCTION.

    A temporary injunction having been issued to restrain defendant from building two stories on premises leased from him by plaintiff, the injunction was vacated upon defendant's giving bond to cover damages resulting to plaintiff by reason of the building. The building was completed, and used by defendant in conducting a rival business, and plaintiff's signs were interfered with. Upon final hearing it was decided that defendant had no right to build the additional stories. *Held*, that the proper relief to plaintiff was not a removal of the additions, but pecuniary damages, and an injunction restraining a rival business on the premises and any interference with his signs.

Action by Hollister E. Hessler against G. Frederick Schafer for injunction. Judgment for plaintiff.

Homer Weston, for plaintiff.

Ide & Ryan, for defendant.

HISCOCK, J. Prior to December 1, 1893, the plaintiff and defendant were engaged as co-partners in the city of Syracuse in carrying on the business of dealing in stoves, furnaces, and other things. Upon said day the plaintiff proposed to the defendant a plan for the dissolution of said co-partnership and for the division of its assets, which was subsequently accepted by the latter, and upon January 30, 1894, formally agreed upon by the parties. By this arrangement between them, among other things, plaintiff was to pay to defendant several thousand dollars in addition to certain firm real estate which the latter was to take. In consideration of this the plaintiff was to take the business assets of the old firm, including its stock in trade, and was to have a lease of the property, which furnishes the basis for the present dispute between them, and which was described in the agreement as "the rear of the Nauman property and the Reis property now used by the co-partnership." Upon January 31, 1894, a formal lease by defendant to plaintiff was made by which was leased for the term of five years, at the annual rental of $300, the premises in question here, and which were described in the lease as "that portion of the rear of the Nauman and the Reis property now or formerly used by the firm of Hessler & Schafer." Said lease also contains two clauses which have become of special importance in this action. One of these clauses was to the effect that the lessor (defendant) was "to keep the roof, conductors, overflows, wash pipes, and sewers in good and suitable condition for the safe use by second party of said premises." The other clause was to the effect that

plaintiff, the lessee, would permit defendant, as lessor, to "enter said premises at all reasonable hours to examine or make such repairs and alterations therein as shall be necessary, or as he may consider necessary, for the preservation or improvement thereof." The premises leased consisted of a one-story building, suitable and used for the purposes of a store, etc., which fronted upon Butternut street. The roof of said building was of tar and gravel, and of substantially the same level throughout. A stairway by the side of the store gave access to such roof from the street. As bearing on the rights of the parties, and to aid in the interpretation of that clause in the lease which described the property demised as that "now or formerly used by the firm of Hessler & Schafer," as well as of other clauses in the lease, considerable evidence was given in regard to the use or nonuse of this flat roof by such co-partnership for the purpose of storing empty boxes and barrels in connection with their business, and I reach the conclusion that the roofs of both the Reis and Nauman property were more or less so used by said co-partners. In fact, there is not much dispute upon this question, for it is conceded by defendant that such articles were stored upon the roof of the Nauman property, and carried down over the Reis property through this stairway in question. It is true, it is claimed by defendant that they were carried up to such roof by another stairway, but that stairway is not in any way now leased to or controlled by plaintiff, and therefore there is no way for him to obtain access to and use the Nauman roof without being able to have access to and use the Reis roof. The clause above quoted that defendant was to keep the roof in suitable condition for the use by plaintiff, and which was written, and not printed, in the lease, would also seem to indicate some other expected use of it than for the ordinary purposes of protection.

After the dissolution aforesaid, and after plaintiff had entered into possession and occupation of the leased premises, and commenced the carrying on therein of the business of selling stoves, furnaces, etc., defendant commenced to erect on top of the building so leased as aforesaid two additional stories. As above stated, a preliminary injunction was granted restraining such construction, but, that being subsequently vacated upon the giving of the undertaking provided, defendant continued to complete the construction and erection of such two stories. Among others, the temporary effect of such construction was to more or less damage by rain and exposure plaintiff's goods, and to interfere with the conduct of his business, the arrangement of his signs, etc. The permanent effect of such construction has been, among other things, to prevent the use by plaintiff of the roof above mentioned for storage purposes, and to place directly above and over the store and story occupied by him two stories of a building which are more or less covered with defendant's signs, and in which he is conducting a rival business, and to and from which somewhat bulky and heavy goods are moved up and down in front of plaintiff's premises. There have resulted also some minor changes in the construction of the store occupied by plaintiff, such as erecting a post near his door, putting in girders, etc.

The legal question presented, of course, is whether defendant had

the right to enter upon such premises after they were so leased by
him to plaintiff as aforesaid, and to erect these additional stories.
There is no evidence to indicate that if he had such right at all he
has unduly or negligently damaged or interfered with plaintiff's
property and business.    In fact, there is little dispute between the
parties that the damages, temporary and permanent, which plaintiff
has suffered .necessarily flowed and resulted from the acts of de-
fendant; and upon that account perhaps the contention is all the
more strongly made by plaintiff that he did not have the right to
perform them.    The question of whether he did or not is to be
determined substantially by the construction of the clause already
quoted from the lease, whereby it is provided that the lessor may
enter the premises leased to make such repairs and "alterations
therein as shall be necessary, or as he may consider important, for
the preservation or improvement thereof."    It is not claimed that
the acts performed by defendant were to any degree, at least, re-
pairs or alterations necessary or important for the preservation of
the property.    The contention, therefore, is narrowed down still
more to a construction of the words allowing the landlord to go
upon said premises for the purpose of making such "alterations
therein   *   *   *   as he may consider important for   *   *   *   the
improvement thereof."    Defendant claims that these words did per-
mit him to perform the acts complained of by plaintiff; that un-
der them there was substantially no limit to the changes which
he might make in the demised premises, which, according to his
judgment, improved them, so long only as he acted and exercised his
judgment in good faith.    I do not find myself able to agree with
this contention.    I think that the entire clause in question had for
its general purpose the keeping of the premises in good repair and in
good condition; that when it permitted defendant to make repairs
and any alterations "therein which he might consider important
for the improvement thereof" it meant to give him the right to
make such changes in the minor· detail of the premises and build-
ings as would better the condition thereof, having in mind the con-
dition and purposes and object of the premises as they were leased,
and without substantially altering or changing the construction and
condition thereof.    I do not believe that the clause and words
quoted gave to the defendant the right upon the building which he
leased· as a basis and first story to put up a substantially new and
different structure and building which would substantially change
the condition and uses and advantages of the building which he had
leased, even though, in his judgment, when it was completed, the new
building would be an improvement over the old one.    Upon de-
fendant's construction of this clause, if he had leased to plaintiff a
house and lot to be used strictly for dwelling purposes, and if
through conditions existing at or subsequent to the time of the lease
it would be an improvement to the premises in a pecuniary or rev-
enue producing way to erect in the front yard or even add onto the
house a business block, he would have the right to do it.    That would
be, perhaps, a little more extreme, but not much more so than the acts
which have been performed in this case.    Plaintiff, as stated above,

as part of the dissolution of the former co-partnership with defendant, took the business of the firm, and leased the premises in question for the purpose of there carrying on such business. Defendant has constructed on top of the premises which he leased an entirely new structure, in which he is carrying on a rival business, necessarily to the detriment of and interference with plaintiff's business. The new structure is no improvement to the premises leased by plaintiff, and for which he is paying defendant rent. It is simply an addition to those premises for the benefit of defendant, and at the expense of plaintiff's rights. If defendant's contention is correct that this may be done, there is no limit to what may be done in the way of changing and altering the building leased, or in fact removing it altogether.

It is true, as claimed by defendant's counsel, that if plaintiff has voluntarily made a lease containing a clause which permits defendant to do as he has done, he cannot complain, and should not be relieved of the consequences of his contract simply because it may be a hard one. But in interpreting the lease in question, and thereby determining whether plaintiff has made such a contract as is claimed by defendant, it is not only the right, but the duty, of the court to give such reasonable construction, when possible, as will secure a fair measure of justice between the parties to the contract, and not place one of them largely or wholly at the mercy of the other. Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391. Reaching the conclusion, therefore, that the construction claimed by plaintiff, and not that urged by defendant, is the proper one to place upon the clause in controversy, the question is reached, what form of judgment and manner of relief shall be given? It is insisted by plaintiff that, in addition to compelling defendant to respond in damages for injuries already suffered, the court should compel him to tear down the new structure, and to restore the premises to the condition in which they originally were. Defendant, upon the other hand, says that by the order vacating the preliminary injunction and allowing the building to proceed and the undertaking given thereunder to cover any damages which plaintiff might suffer for defendant's acts which should be held unauthorized, the necessity for this present action or any relief thereunder has passed, and that plaintiff has virtually been relegated and restricted to an action at law upon the bond to recover any proper damages. Neither of the courses suggested seems to be quite the one to wholly pursue in this case. After the making of the order and the giving of the undertaking in question, plaintiff undoubtedly might have discontinued and abandoned this action, and resorted to one upon the undertaking; but he was not obliged to do so. The order and undertaking together simply, in effect, provided that defendant might go ahead with the construction of his building, and insured to plaintiff the recovery of any damages which he might suffer by reason of such procedure before a final judgment should be rendered fixing the rights of the parties and awarding the proper relief. As appears very clearly by the decision of the appellate court, it was not intended by this preliminary order to finally determine the rights of the parties, or to limit the court in its final

decision and determination.    There is probably no doubt, therefore, that this court could now render a judgment compelling the defendant to pull down the new stories, and to restore the building as nearly as possible to its original form.    In view, however, of the fact that the court, by its order, has allowed him to complete the building, and has made provision for his responding for any damage caused thereby, it would seem rather inequitable that the court should now compel him to pull down a building which he has thus been allowed to put up, and that justice would be better subserved by allowing the building to stand, and by restricting the mandatory and pro- hibitory powers of the court to restoring such details of the original construction as can easily be replaced upon the one hand, and upon the other to preventing such use of the new building as will be materially injurious to plaintiff.    This end will be secured by pro- viding in the usual form for a reference to ascertain the damages which plaintiff has suffered, or will before the expiration of his lease suffer, from the construction complained of; by further providing that defendant shall restore, as nearly as possible, the plaintiff's signs, and that he shall remove and efface his own signs from the building, and that the new portion shall not henceforth be used by defendant for the conduct and prosecution of his present business, or for any other business, use, or occupation which will materially interfere with plaintiff's enjoyment of the premises leased by him.

Ordered accordingly.