[Civ. No. 7132. First Appellate District, Division One.—September 17, 1930.]

CHARLES H. LAYNE, Appellant, v. CALHOUN BRYANT et al., Respondents.

John Ralph Wilson and Everette C. McKeage for Appellant.

Cleveland R. Wright for Respondents.

PARKER, J., *pro tem.*—In this action plaintiff sought damages accruing to him by reason of defendants' breach of covenant. The case was tried by the court without a jury. From a judgment in favor of defendants the plaintiff prosecutes this appeal.

The facts will disclose themselves as the opinion procceds. On May 7, 1923, Frank Pearson and wife owned two contiguous and parallel pieces of property in the city and county of San Francisco. It is unnecessary to describe these properties by metes and bounds. The properties can be sufficiently identified under the description of their respective street numbers, as follows, namely, 1430 Clay Street and 1440 Clay Street. On May 7, 1923, by proper conveyance, the Pearsons conveyed to one Rose Johnson that property described as 1430 Clay Street. Thereafter and continuously the said properties have been transferred and conveyed by the various owners thereof, the common title never having returned to one ownership.

The plaintiff in the present action deraigns his title to 1430 Clay Street from Pearson and the defendants likewise claim ownership to 1440 Clay Street through mesne conveyances from the same original source.

On May 10, 1923, a certain document was executed around which centers the present controversy, to a great extent. Inasmuch as frequent reference thereto might result in repetition we will here give the exact words thereof:

"Frank Pearson and Wife
to
"R. D. Johnson and wife.

"This agreement made and entered into this 10th day of May, 1923, by and between Frank Pearson and Milicent E. Pearson, his wife, owners of that certain building #1440 Clay Street, this certain building having a steam heating plant and furnishing steam to a certain pipe line running east through the adjoining building, do hereby agree to keep that certain steam line filled with steam from 6 A. M. to 10 A. M. and from 4 P. M. to 9 P. M. daily and on exceptionally cold days from 6 A. M. to 10 P. M. (exception only on exceptionally warm days).

"It is expressly understood, however, that the steam heating plant of #1440 Clay Street furnishing steam to that certain pipe line running east through adjoining building for the purpose of hot water shall be kept filled with hot water continuously. Now that certain building #1430 Clay Street hereby leases the use of the above enumerated steam line for a period of five years with a renewal of five years at its option. Same cancellable at the option of the lessees. Notice of cancellation to be given to the owners as above of #1440 Clay Street. It is also understood and agreed that the owners of #1440 Clay Street shall furnish to the owners of #1430 Clay Street that adequate janitor service for taking care of the halls, stairway, vestibule and front steps for #1430 Clay Street and also for a period of five years with an option of five years. Same cancellable at the option of the lessees. Notice of cancellation to be given to the owners as above of #1440 Clay Street.

"The stipulated sum covering, comprehending and embracing all the above furnishings and services shall be Fifty Dollars per month. Same payable at the end of each calendar month. Water used on both premises to be paid monthly *pro rata* by the owner of each building.

"This agreement being made between Frank Pearson and Milicent Pearson, his wife, owners of that certain building herein above mentioned, is transferable to the purchaser or purchasers of either of the above mentioned buildings.

"Time is the essence of this agreement.

"In consideration of $50.00 per month together with other valuable considerations receipt of which are hereby acknowledged, we herewith subscribe our hands and seal the day and year first above written.

"FRANK PEARSON.
"MILICENT E. PEARSON.
"ROSE JOHNSON.
"R. D. JOHNSON.

"Witness: LAURENCE A. ROSENBLATT."

This instrument was not acknowledged by any of the parties thereto, but on September 18, 1923, acknowledgment was made by the witness in the usual form, before a notary public and on September 19, 1923, the instrument was recorded in the public records of the city and county of San Francisco.

It is the contention of the appellant that the covenants in the foregoing writing contained are covenants running with the land and as such enforceable by any subsequent grantee as a part of the title to the premises.

Without attempting a treatise on the law of covenants running with the land we are of the opinion that the agreement or writing before us contains none of the essentials of such a covenant. From the record before us, without indulging in speculation or hazarding a guess, it is apparent that the document discussed is in the nature of an agreement between owners of several pieces of real estate. The title to No. 1430 had passed from the Pearsons prior to the signing of the instrument and there is nothing before us to indicate that it was executed by way of grant or at all connected with any prior transactions between the parties thereto. On its face it indicates nothing more than that Pearson owned a steam plant at No. 1440 Clay Street and that for a consideration expressed he agreed to furnish, for a certain period, steam and hot water and janitor service to the owner of the adjoining building. Appellant cites many cases in support of his contention. However, the cases cited are easily differentiated. It may be conceded that agreements to furnish water may, in certain instances, follow the land, but not, strictly speaking, as covenants running with the land. The distinction, as pointed out in *Henrici* v. *South Feather Land Co.*, 177 Cal., at page 448 [170 Pac. 1135], being that an agreement to furnish water

confers upon the land owner a specific right or interest in real property and that anyone purchasing with notice, actual or constructive, of the land owner's interest, takes subject to it. ■ In the case before us it is not contended that any interest passed through the Pearson agreement, if such it can be called. The terms of the instrument wherein it provides for janitor service and specific provisions for cancellation at the option of the lessees seem to indicate the transient and personal nature of the attempted agreement.

Throughout the history of the law there has been something of a dignity akin to an estate which has characterized a covenant running with lands. Measured by any rule or standard the undertaking or agreement here does not approach this. Appellant lays much stress upon the wording of the instrument which permits of a transfer of the agreement to the purchaser of either building. The fact is that there is nothing in the record disclosing any transfer from the original owners to the present holders of the title. It is true that in the later deeds this agreement was mentioned as an encumbrance on No. 1440 and in the deed of No. 1430 to the present owners there is a grant of all of the benefits and options arising out of the said agreement.

In concluding this phase of the case it may be noted that the use and enjoyment of No. 1430 was not dependent upon the easement claimed nor was the enjoyment of the said easement in anywise necessary or essential. The building at No. 1430 was fully equipped with pipes and radiators to receive and distribute heat and water and in essence the agreement was merely to keep a fire burning in a common boiler located at No. 1440.

Without further discussion, with the instrument in full before us, we hold that it does not create a covenant running with the land. ■ We have thus far treated the instrument as an agreement merely for the purposes of analysis and discussion. However, it is obvious that the term agreement as applied to the writing is a misnomer. The writing is rather a nondescript. On its face it shows that the owners of No. 1440 agree between themselves that they will keep a certain steam line filled with steam and a hot water line filled with hot water during certain hours. That when it is an exceptionally cold day they will run the

plant longer. Then the building at No. 1430 Clay Street magically endowed with contractual capacity leases the use of the steam line for five years. Obviously, the instrument lacks parties competent to contract; there is no promise and the instrument in its entirety totals a mere manifesto declaring the intent of the owners of No. 1440. Such an instrument, without reformation, could not be specifically enforced and in its present shape it is difficult to determine just what rights could be created thereunder or thereby.

Appellant urges that, whatever construction may be placed upon the writing referred to, still the fact remains that the owners of both properties, at a time when the same were embraced within one ownership did so burden No. 1440 to the use and benefit of No. 1430 as to create an easement appurtenant to the latter. In support of this contention we are cited in the case of *Silviera* v. *Smith,* 198 Cal. 515, at page 517 [246 Pac. 58, 61], wherein the general doctrine is announced as follows:

"Where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all of the benefits that appear at that time of the sale to belong to it as between it and the property which the vendor retains. Where the owner of one heritage consisting of several parts has so adapted them that one derives a benefit from the other, when he sells one of them without making mention of the incidental burdens of one in respect to the other, an implied understanding arises that the burdens and correlative advantages shall continue as before the separation of the title."

With this principle of law we are in a complete accord. Like other sound principles of law it maintains its strength through limitation. The benefits appearing to and as a part of the severed portion must in themselves be real and necessary incidents to the enjoyment of the part or parcel transferred. It could not be seriously contended that the entire duty of maintenance and upkeep followed with the mere sale. There is no evidence in the instant case to enlighten us as to the actual condition of the two premises at the time the title passed from the Pearsons. On this, however, we may assume that there was but one place wherein steam was generated and pipes leading therefrom

to the several parcels or tenements. Indeed, we find this condition at the time of the purchase by the respective parties to the instant suit.

But, again referring to the written instrument before us, we find the idea of an easement or *quasi* easement as passing with the premises made negative by the implied stipulation that it was not included in the transfer in so far as the use was expressly leased and for a definite period of time.

The most that can be made of the transaction is that the owner of No. 1440 Clay Street declared that he would continue to serve steam and hot water to No. 1430 Clay Street as long as the latter desired the service, not to exceed ten years in all, at a monthly rental of $50 per month. We might, for the purposes hereof, go further and conclude that this offer was accepted by the owners of No. 1430 Clay Street, but was at all times subject to the wishes of said owners. As indicated in the statement of facts hereinbefore the plaintiff entered into the possession of No. 1430 some few months prior to the entry of defendants into the possession of No. 1440. Just what service or what conditions as to service then existed the record does not fully disclose. But we find that almost immediately, or within a short time after defendants took No. 1440, they repudiated the alleged contract and disclaimed any liability thereunder.

There is evidence to support the finding that the parties to the present action agreed that the original so-called contract and agreement was not binding upon either of them and that the said parties did thereupon make and enter into a new and different agreement, running from month to month, providing different hours of heating and different service at an increased cost. To a certain extent, appellant concedes this, but maintains that the new agreement was after defendants had been in default on the service and was made by plaintiff with an express reservation of any claim for damages that had or might accrue to him. The findings of the trial court are against plaintiff on this issue and these findings are supported by competent testimony, disputed it is true, but sufficient upon which to predicate the finding. There is ample evidence to support the finding that the new contract and even the old contract, if recognized, was breached by the plaintiff's failure to pay

for the service rendered. Thereafter the defendants terminated, through proper notice, the contract.

█ While we will not attempt any analysis of the various contentions of the parties, there is ample evidence to support the finding of an abandonment by plaintiff of any claims under the original writing of the Pearsons. There is testimony showing a full compliance with the provisions of the Pearson arrangement up to the time of the new agreement. There is evidence of payments expressly under the new agreement. There is evidence, admittedly true, that at or about the time of the new agreement the plaintiff made arrangements to install his own heating plant and that in continuity of these arrangements he did proceed and complete the installation. There is evidence of a failure to pay for the service rendered and of the termination by defendants of the contract. There is further evidence supporting the finding that at or about the time of the completion of the plaintiff's separate installation the said plaintiff did cut off and disconnect the pipes leading from the premises at No. 1440 and did thereafter generate and supply through his own plant the necessary steam and hot water to the premises of No. 1430 Clay Street.

In view of these findings, supported as they are by competent evidence, we agree with the court below that plaintiff was not entitled to recover from the defendants.

█ Many other points are raised upon this appeal, all of which find solution in the foregoing. Incidentally, the trial court found that plaintiff was in nowise damaged by the failure of defendants to supply the steam and hot water after or at the date of the alleged breach. This finding has ample support in the record, which discloses that the plaintiff was at that time equipped with his own plant, constructed by him at a time when there was or had been no failure or nonperformance on the part of defendants and after a mutual abandonment of the original claims by both parties.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.