[L. A. No. 21295. In Bank. Feb. 9, 1951.]

DON G. OWSLEY et al., Appellants, v. JACK HAMNER, Respondent.

712

George R. Maury, S. L. Kurland and Alden F. Houck for Appellants.

Murchison & Meyers, R. Bruce Murchison, John Bricker Myers and Claude B. Cumming for Respondent.

CARTER, J.—This is the second appeal in this case (see *Owsley* v. *Whelan Drug Co.*, 83 Cal.App.2d 454 [189 P.2d 50]).

Plaintiffs are the owners of a two-story business building at the northwest corner of the intersection of Kinross Avenue, a street running east and west, and Broxton Avenue, a street running north and south in University Village, Westwood Hills, Los Angeles County. They acquired the property by purchase in 1945. The street level floor of the building consists of a store at the southeast corner of the building facing east on Broxton, and south on Kinross, referred to as store No. 1. Also facing south on Kinross are stores No. 3 and No. 4, the latter on the west side of the building. The portion of the building—store No. 2—leased to defendant by plaintiffs' predecessor, is the north side thereof, facing east on Broxton. Between stores No. 1 and No. 3 a passageway extends from Kinross north to the center of the building and store No. 2, where it turns east and runs between stores 1 and 2 to Broxton. At the turn or elbow the area is enlarged into what is referred to as a patio which is open to the sky through the second story of the building. The remainder of the passageway is covered by the second story. The passageways and patio are permanent in character and designed as such.

In June, 1929, plaintiffs' predecessor-owner of the building, executed as lessor, a lease to defendant of store No. 2 for men's furnishings business describing it as: ''That certain store space on the first floor of the University Professional Building, situated on the Northwest corner of the intersection of Broxton Ave., and Kinross Ave., in University Village, Westwood Hills, County of Los Angeles, State of California, said store premises hereby leased having total square footage of approximately 3,000 sq. feet and frontage of approximately thirty (30) feet on Broxton Ave., just North of the entrance to Building, store including mezzanine and basement and running through to the alley. Also room 17 x 18 to be used as shoe store. Also approximately 440 sq. feet on second floor to be used as tailoring shop or executive offices as long as the business shall warrant same in the judgment of lessee . . .''

It is recited in the lease, and such was the fact when the lease was made, that the building in which the leased premises were located, was under construction by the lessor and the latter agreed, that in ''. . . placing wiring, arranging entrances, stairway to the mezzanine, ventilators, plumbing, electrical outlets, fixtures etc. their architect will cooperate with the architect of the lessee, so as to conform to lessee's plan for the placing of store fixtures. Also to install oak

plank flooring, window-backs, windows and lighting fixtures as per sketches to be supplied by lessee; to fir down to all cabinets, and install all partitions and closets, steam heat and hot water, electrical outlets where required, fireplace (imitation) and gas connections, two toilets and one shower.'' The lease provided for a rental consisting of a percentage of the proceeds from the business conducted on the premises and the usual covenant of quiet enjoyment.

The court found that prior to the execution of the lease, negotiations were had between defendant-lessee and the owner. Defendant inspected the building while under construction, was shown the blueprints governing the construction, and the building was so constructed with the passageways, patio and display windows and entrances as heretofore mentioned, and has existed in that manner to the present. Thus, as constructed in 1929 by the owner, and as contemplated when the lease was made, store No. 2 occupied the north 30 feet of the building with a 30-foot frontage on Broxton, the patio extended into the south line of the store some distance, and show windows and entrances were on the south side of store on the patio and passageway from Broxton. There was also an entrance and show windows on Broxton.

Plaintiffs, in their complaint, contend they have the right, and intend to close the passageways, except for a small portion extending from Broxton, and all of the patio, or at least a part thereof, and utilize them for other purposes.

The court found: ''That the defendant . . . is, . . . the lessee, . . . of Store No. 2 and of three rooms on the second floor, as well as certain space on the mezzanine floor and in the basement, as more particularly described in said lease, . . . that Store No. 2 was occupied by subtenants of the defendant . . . in the operation of a men's clothing and furnishing store; and that the remainder of the said leased premises was occupied by the defendant . . . for use as a tailor shop, work rooms and sales rooms. That the said lease was for an original term of ten years with two additional ten-year terms at the option of the defendant . . . that the first option was exercised and the said defendant intends to exercise the second option so as to extend the lease term to November 1, 1959. . . .

''That the patio is obviously designed, constructed and decorated as a permanent and integral feature of the building. That the closing of the Kinross entry and expansion of Store No. 1 would interfere with and deprive the defendant Jack

Hamner and his subtenants of light, air, and the public's view of the seven (7) display windows, and interrupt egress and ingress through the two doorways, all of which windows and doorways open on the said patio. That the continued use of the patio as it now exists for purposes of light, air, access and public view of the display windows, is of substantial and material value to the leasehold interest of the defendant Jack Hamner. . . .

"That the patio is and has been in constant use by the general public, and is used as a shortcut between Broxton and Kinross Avenues. That the use thereby causes many people to pass by the seven display windows in said patio, all of which is of material financial benefit to the business being conducted in defendant's leasehold premises, and of substantial value to the leasehold.

"The Court finds that the continued existence of the building as it now exists, including the uninterrupted use of both the Kinross and Broxton entrances, is necessary to the full and beneficial use of the portion of the premises leased to the defendant Jack Hamner, and that the use of the windows and display purposes, and for light and air, is of substantial benefit to the said defendant.

"The Court further finds that if the Kinross entry to the patio was closed and the patio area reduced in accordance with the plan outlined in green lines, as shown in Exhibit 1 attached to the Complaint and as set forth in plaintiffs' second cause of action, the defendant . . . would still suffer material and substantial loss in the business conducted in his leasehold premises, as such construction would obstruct all view of the display windows from Kinross Avenue, thus losing their value entirely, inasmuch as said windows are not clearly visible from Broxton Avenue; that such construction would destroy the shortcut feature of the patio and thereby discourage and prevent the public's use of the patio, and thereby destroy the display value of the windows; that the proposed change would destroy the beauty and the character of the building and create a narrow "hole" accessible only from Broxton entrance; that the general public would have no inducement to enter such narrow cul-de-sac, and that the light and air to his patio windows would be greatly diminished; all of which would be to the substantial detriment of the Defendant Hamner, and materially depreciate the value of his leasehold.

"The Court further finds that when the lease to the said premises was entered into . . . that it was the manifest intention and the agreement of the parties thereto that the defendant . . . should have the occupancy of the interior areas described in his lease, and should also have the use of the patio as a source of light and air to his windows and doors opening thereon; for display of merchandise in the said windows; for room for customers and the general public to have convenient access to such windows; and for the free flow of pedestrian traffic through the patio by means of both the Broxton and Kinross entries. The Court finds that all of these things are reasonably necessary for the full and beneficial use of the interior store areas described in the lease to the defendant Jack Hamner. These facts were apparent to and were known by the plaintiffs when they acquired title to the property."

Thus the easements claimed by defendant to exist in the patio (floor area and upward to the sky) and the ways to both Kinross and Broxton were based in part at least on the doctrine of implied easements; no mention is made of such easements on the face of the lease. Plaintiffs contend, that in this state, there are no implied easements arising from a lease and running to the benefit of the lessee; relying upon section 820 of the Civil Code, reading: "A tenant for years or at will has no rights to the property than such as are given to him by the agreement or instrument by which his tenancy is acquired, or by the last section."

Without mentioning that code section, it has been repeatedly held (and the rule is practically universal), as expressed by this court in *Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1, 10 [47 P.2d 462] : "A lease of a part of a building passes with it, as an incident thereto, everything necessarily used with or reasonably necessary to the enjoyment of the part demised. . . . The general rule is that where a store is leased, everything then in use for the store, as an incident or appurtenance, passes by the lease. (*Hall* v. *Irvin*, 78 App. Div. 107 [79 N.Y.S. 614] ; *Broning* v. *Dalesme*, 3 Sandf. (N.Y.) 13.) . . .

"The above principles are well settled. Supported by many authorities, the principles are stated as follows in 36 Cor. Jur. 39, section 630:

" 'A lease of a particular part of a building gives the lessee no rights outside of such part, except such as were intended to be included as appurtenant to the beneficial en-

joyment thereof, or such as it was manifest had been designed and appropriated for the benefit of the leased premises.'

"In 36 Cor.Jur. 30, section 632, it stated:

"'As a general rule everything which belongs to the demised premises or is used with, and appurtenant to, them and which is reasonably essential to their enjoyment passes as an incident to them, unless specially reserved. This rule, for example, applies to a lease of a part of a building.' " We believe the foregoing correctly states the rule applicable here. (See *Runyon* v. *City of Los Angeles*, 40 Cal.App. 383 [180 P. 837]; *Harrison* v. *Ziegler*, 51 Cal.App. 429 [196 P. 914]; *Hamelin* v. *Foulkes*, 105 Cal.App. 458 [287 P. 526]; *Owsley* v. *Whelan Drug Co.*, 83 Cal.App.2d 454 [189 P.2d 50]; *Ng* v. *Warren*, 79 Cal.App.2d 54 [179 P.2d 41]; *Mayer* v. *Hazzard*, 10 Cal.App.2d 1 [51 P.2d 189]; *Guttman* v. *Berry*, 83 Cal.App.2d 507 [189 P.2d 41]; *Rees* v. *Drinning*, 64 Cal. App.2d 273 [148 P.2d 378]; Thompson on Real Property (Perm. ed.) § 1165 et seq.; 51 A.L.R. 1298; 51 C.J.S., Landlord and Tenant, § 293 et seq.; 32 Am.Jur., Landlord and Tenant, § 169 et seq.) ▮ Section 820 is not inconsistent with the rule above stated, as it speaks of rights other than those given by the agreement (lease). Hence, as appears from the foregoing authorities, rights such as the easements here involved, constitute an implied part of the lease. The same reasoning distinguishes the language in *Harrelson* v. *Miller & Lux, Inc.*, 182 Cal. 408, 412 [188 P. 800]. The section should be read in the light of other provisions that: "A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or watercourse, or of a passage for light, air, or heat from or across the land of another." (Civ. Code, § 662.) "The transfer of a thing transfers also all its incidents, unless expressly excepted; but the transfer of an incident to a thing does not transfer the thing itself." (Civ. Code, § 1084.) "The incident follows the principal, and not the principal the incident." (Civ. Code, § 3540.) "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." (Civ. Code, § 1104.)

None of the cases cited by plaintiffs, which have mentioned section 820 of the Civil Code, involve the question of implied easements. The cases cited *supra* are not distinguishable on the ground that some of them involved the question of liability for injury to a third person by reason of a defect in the premises. Plaintiffs advance no valid reason why rights should be measured by different tests in such cases than in those involving landlord and tenant.

In the instant case the ways were designed by the lessor owner who constructed the building and were so indicated on the plans at the time the lease was made. They were constructed in that manner with defendant's-lessee's display windows and entrances facing thereon. Those factors point to their being appurtenant to or part of store No. 2. They were obvious and permanent in nature. They existed at least to the point of being contemplated and designed and laid out when the lease was made. "The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances. Although the prior use made of the property is one of the circumstances to be considered, easements of access have been implied in this state in situations in which there was no prior use. For example, where land was conveyed by reference to a map or plat showing proposed streets, it has been held that the grantee had an implied easement therein for use as a private way." (*Fristoe* v. *Drapeau*, 35 Cal.2d 5, 8 [215 P.2d 729].)

Plaintiffs contend that the evidence does not establish that the ways and patio are necessary to make the leased premises tenantable or for the enjoyment of the premises, and, therefore, they do not constitute easements appurtenant by implication. The law is not, however, that for such easements to be implied, they must be absolutely necessary or such as to make the leased property tenantable. The prevailing test, as stated in *Bellon* v. *Silver Gate Theatres, Inc.*, quoted *supra*, is whether they are "reasonably necessary for the beneficial enjoyment of the property leased." (See *Fristoe* v. *Drapeau, supra*, 35 Cal.2d 5; *Runyon* v. *City of Los Angeles, supra*, 40 Cal.App. 383; *Hamelin* v. *Foulkes, supra*, 105 Cal. App. 458; *Owsley* v. *Whelan Drug Co., supra*, 83 Cal.App.2d 454; *Ng* v. *Warren, supra*, 79 Cal.App.2d 54; *Harrison* v. *Ziegler, supra*, 51 Cal.App. 429; *Mayer* v. *Hazzard, supra*, 10 Cal.App.2d 1; Thompson on Real Property (Perm. ed.) § 1165 et seq.; 51 A.L.R. 1298; 51 C.J.S., Landlord and

Tenant, § 293 et seq.; 32 Am.Jur., Landlord and Tenant, § 169 et seq.) The same test has been held proper in implied easements arising from a conveyance, as distinguished from a lease, of property. (*Beem* v. *Reichman,* 36 Cal.App. 258, 263 [171 P. 972]; *Cheda* v. *Bodkin,* 173 Cal. 7 [158 P. 1025]; *Nay* v. *Bernard,* 40 Cal.App. 364 [180 P. 827]; *Southern Pac. Co.* v. *Los Angeles Milling Co.,* 177 Cal. 395 [170 P. 829]; *Kallenburg* v. *Long,* 39 Cal.App. 731 [179 P. 730]; *Fischer* v. *Hendler,* 49 Cal.App.2d 319 [121 P.2d 792]; *Rees* v. *Drinning,* 64 Cal.App.2d 273 [148 P.2d 378]; *Navarro* v. *Paulley,* 66 Cal.App.2d 827 [153 P.2d 397]; Rest. Property, §§ 474-6; 17 Am.Jur., Easements, § 30 et seq.; Tiffany, Real Property (3d ed.) § 779 et seq.) A case analogous to the one at bar is *Gitlitz* v. *Plankinton Bldg. Properties.,* 228 Wis. 334 [280 N.W. 415], where the tenant had leased a store fronting on an arcade passageway and rotunda in a building extending from one street to another a half block away. The owner closed one end of the arcade. Though no mention was made of the arcade or appurtenances in the lease, the court held that lessee had an easement therein by implication under the rule heretofore stated. (See, also, *Hat Box Inc.* v. *Plankinton Bldg. Properties,* 228 Wis. 342 [280 N.W. 419], involving the same building as in the Gitlitz case.)

Some cases have used the word necessary unmodified. (See *Cave* v. *Crafts,* 53 Cal. 135; *Rodemeyer* v. *Meger,* 30 Cal.App. 514 [158 P. 1047]; *Grimmesey* v. *Kirtlan,* 93 Cal.App. 658 [270 P. 243]; *Layne* v. *Bryant,* 108 Cal.App. 324 [291 P. 615]; *A. Hamburger & Sons* v. *Lemboeck,* 20 Cal.App.2d 565 [67 P.2d 380]) but we do not understand them as requiring strict necessity. It must be remembered that the easements by implication here discussed are not of the class known as easements of necessity. (*Cheda* v. *Bodkin, supra,* 173 Cal. 7; *Nay* v. *Bernard, supra,* 40 Cal.App. 364; *Fischer* v. *Hendler, supra,* 49 Cal.App.2d 319.) ▉ Here the evidence is sufficient to support the trial court's finding that the passageways and patio are reasonably necessary for the beneficial enjoyment of store No. 2. Those easements with display windows and entrances thereon have existed practically the same as now, since the lease was executed in 1929. The trial judge viewed the premises, thus observing the physical arrangement. ▉ His observation is evidence in the case. (*Ng* v. *Warren, supra,* 79 Cal.App.2d 54), and the physical circumstances speak for themselves. It is a fair inference that it would be advantageous for a store, which

has entrances and display windows on a passageway from streets, that the latter are beneficial to the business, for business requires customers, and many customers are obtained from those passing by the store. The more streets accessible, the more prospective pedestrian purchasers available. ■ It must be remembered that easements, such as we have here, do not fail to be necessary merely because there are other means of access, that is, they do not have to be the only means of access. (*Rees* v. *Drinning, supra,* 64 Cal.App.2d 273; *Mayer* v. *Hazzard, supra,* 10 Cal.App.2d 1, 3.) ■ There is evidence in the record that the elimination of the easements would have a detrimental effect on the value of the leased property up to 40 per cent; that the display windows on the easements had a definite value as a merchandising attraction, and specific large sales resulted from displays in the windows; that if there was not access to Kinross, the windows would lose half their value; that they are used by the general public for "window shopping." Certainly a substantial reduction in the value of the leased property by the elimination of the ways and patio is a factor bearing upon reasonable necessity because the use of property and its value are directly related. If it has less value because of a restriction on its use, as would normally be the case, the reason therefore is because full use is necessary to full enjoyment—the postulate of maximum value. The foregoing factors are sufficient to support findings that the passageways and patio are reasonably necessary for the full enjoyment of the leased premises.

■ Plaintiffs refer to testimony that one of defendant's subtenants did not use the windows for display purposes as the sun would damage his merchandise; that the light from this source was negligible; that the "pulling power" of the display windows is insignificant; and that the doors on the patio had been locked and not used. This evidence merely created a conflict upon a question which essentially was one for the trier of fact. (*Bellon* v. *Silver Gate Theatres, Inc., supra,* 4 Cal.2d 1.)

■ It is argued that there is a clause in the lease which negatives any implied easement and gives to the plaintiffs the right to close the passageways and patio. It provides: "The lessor agrees to keep the building in good repair, including the roof, walls, sewer and main building plumbing, and to repair any defects in material and workmanship not caused through fault of said lessee. The lessor shall have the right at all reasonable times to enter into and upon the premises

hereby leased for the purpose of inspecting the same and for the purpose of maintaining the building and making *repairs, alterations or additions* thereto without any rebate of rent to the lessee for any loss of occupancy or a quiet enjoyment of the premises thereby occasioned." (Emphasis added.) We do not so construe that clause. Its plain intent is merely to authorize the owner to enter the leased premises for the purpose of making "repairs, alterations or additions" to the *building*, he having the duty of keeping the *building* in good repair. By building is meant those parts of it which the lessor is obligated to maintain. It does not mean that he may make alterations of the building which will substantially or permanently destroy the leased premises or the easements which are a part thereof and appurtenant thereto. If that were not true, the lessor could make, with impunity, the leased premises completely useless in the face of the covenant of quiet enjoyment. ▆▆ A provision in a lease, like the one here involved, is to be given a reasonable construction to avoid impairment of the covenant of quiet enjoyment. (See *Succession of Marx* v. *Schornstein*, (La.App.) 169 So. 93; *Nabru Associates* v. *Zimmerman*, 247 App.Div. 645 [288 N.Y.S. 315]; *Reichhold* v. *Sommarstrom Invest. Co.*, 83 Cal. App. 173 [256 P. 592]; *Hessler* v. *Schafer*, 20 Misc. 645 [46 N.Y.S. 1076], affirmed 29 App.Div. 627 [52 N.Y.S. 1143].)

▆▆ There are no implied easements for light and air, plaintiffs assert, and the court erred in finding that the patio must remain open to the sky, citing *Kennedy* v. *Burnap*, 120 Cal. 488 [52 P. 843, 40 L.R.A. 476] and *Clark* v. *Mountain States Life Ins. Co.*, 1 Cal.App.2d 301 [36 P.2d 848], holding that no such easement over the grantor's property will be implied when he conveys his property which adjoins that over which the easement is claimed. There is a conflict of authority on the subject (see 23 Cal.L.Rev., 440; 9 A.L.R. 1634; 56 *id*. 1138), but the weight of authority is in accord with the Kennedy case. However, there is not as much divergence in regard to easements flowing from a lease of only a part of the property. (See *Clark* v. *Mountain States Life Ins. Co., supra*, 1 Cal.App.2d 301; 51 A.L.R. 1302; 56 *id*. 1138.) As we understand plaintiffs' complaint, however, they are not seeking to close the patio area where it extends through the second floor and roof of the building, so that problem is not presented. As we have seen, defendant has an easement which prevents plaintiffs' proposed alterations based upon factors other than light and air. Hence the portion of

the judgment referring to light and air may be treated as surplusage.

Plaintiffs claim that the judgment violates the statute of frauds, and is a fraud on them, because they purchased the building without knowledge of the easements. Plainly, the statute of frauds is not applicable here because the easements arise from the lease which was in writing. (Tiffany, Real Property, § 780.) Clearly the easements were open, obvious, and apparent and permanent in nature when they purchased the property. Therefore, they cannot claim lack of notice.

Finally, it is asserted that the court failed to find that all the area of the ways and patio is used with the premises. The findings heretofore quoted clearly cover the subject, at least by inference, and are sufficient to support the judgment.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.