Jerry MAIATICO, Appellant,

v.

George STEVENS, Appellee.

Nos. 1819, 1820.

Municipal Court of Appeals for the District of Columbia.

Argued July 9, 1956.

Decided Sept. 14, 1956.

276

Herman Miller, Washington, D. C., for appellant.

Louis Urow and Milton E. Canter, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellant landlord filed two complaints against the appellee demanding possession (1) of two basement rooms of premises 1726 Eye Street, N.W., and (2) of a restaurant situated on the ground floor of the same premises.

On October 14, 1952, landlord leased to tenant the restaurant on the first floor of the building for a term of ten years, to commence on January 1, 1953; this lease superseded an earlier lease between the former owner and the appellee dated January 14, 1947, which by its terms extended beyond January 1, 1953, but which by agreement of the parties was canceled as of December 31, 1952.

The basis of the action to recover the two basement rooms was that the lessor had permitted the lessee to use these rooms as a licensee in connection with the operation of the restaurant business; that he had revoked the license but that appellee refused to surrender the rooms. His complaint for possession of the restaurant space was predicated upon an alleged violation of paragraph 19 of the lease by appellee's failure and refusal to install his own electric and water meters "in that the use of electricity and water, in the landlord's opinion is excessive." The court found in favor of the lessee on both complaints and these appeals are from judgments entered on the findings.

Regarding appellant's first suit, the soundness of his claim for exclusive possession of the two basement rooms hinges upon his contention that the use and occupancy of the rooms by the appellee was only permissive. The rooms have been and are presently serving the needs of appellee's restaurant as dressing rooms for his employees, as storage space for provisions in connection with the restaurant and as a location for its carbonator.

The lease to the appellee describes: "the restaurant, constituting approximately 1547 square feet, more or less, on the west side of the first or ground floor of the building." The rights exercised by the appellee in the basement rooms are therefore privileges in other parts of the building than those described in the lease. If construed as a license, such would have been extinguished by appellant's withdrawal of his consent to their exercise,[1] evidenced by a letter from appellant's building superintendent to appellee, dated June 17, 1955, giving two weeks' notice to vacate the rooms. We note from the record that appellant purchased the building and became appellee's lessor during the previous lease term at which time appellee was already using the rooms for these purposes. Therefore appellant's assent played no part in the creation of the privileges in question and no evidence was adduced to show his predecessor's permission had given them existence. Nor is it argued that the lease itself expressly creates a license in appellee for such use of the rooms or that appellant at any time expressly permitted it.[2] Therefore if a mere license existed, revocable at the will of appellant, it must be implied. However, appellee contends that he has easements in the rooms, also by implication, passing to him as lessee of the ground floor restaurant area, which cannot be revoked during the term of the lease. If the latter proposition is established by the evidence, the finding that the appellee is entitled to the use of the basement rooms for the named purposes should not be disturbed

■ The right of a lessee of part of a building to the use and enjoyment of a basement area not included in the terms of his lease has been recognized or not

1. Shapiro v. Christopher, 90 U.S.App.D.C. 114, 195 F.2d 785, and cases cited; Goldsmith v. Traveler Shoe Co., 221 Mass. 482, 109 N.E. 394.

2. See 33 Am.Jur., Licenses, § 92.

"depending on the application of governing principles to the particular facts involved."[3] To pass by implication as an easement incidental to a leased portion of a building, the privileges which are exercised in portions not leased must be reasonably necessary and not merely convenient to a tenant's beneficial use and enjoyment of his leasehold. Or, it must be clear from all the surrounding circumstances that this was the use intended by the parties to the lease.[4] If either of these criteria obtain, there must be an express reservation by the lessor in the lease to bar an "implication passing easements".[5]

In the case at hand, lessor's building superintendent testified in substance that during his tenure, including time during which the appellee was operating the restaurant under the previous lease, the basement rooms have been in daily use for the mentioned purposes; that the rooms are locked and that he possesses no key to them. Precisely when appellant acquired this knowledge was not established, except that it was "sometime after" he purchased the building. However, it will be assumed that whatever his agent knew, before the making of the new lease, the appellant knew.[6] Therefore, at the time of the making of the new lease, the appellant was aware of this continuous, apparent use and enjoyment by the appellee of the basement rooms in his building, in restriction of his own rights therein.[7]

The lease itself provides in one paragraph that the tenant must keep clean "such portions of the building * * * as may be used incident to the operation of said restaurant * * *" and that the

appellee's undertakings were limited to conditions arising from the use of the demised premises, or "of such other portions of the building * * * as he may use incident to the operation of his business in the demised premises." Another paragraph makes it the duty of the tenant to make necessary repairs and alterations "for the operation or maintenance of a restaurant, or for the premises used for or incident to the operation and maintenance of the restaurant."

All these factors amply sustain the finding that it was within the contemplation of the parties when the present lease was executed that the rooms in the basement were to continue to be used and occupied by the appellee for storage and dressing rooms and for space to locate the restaurant machinery as being "incident to the operation" of the restaurant.

Nor has appellant persuaded us that the evidence showed that such accommodations were merely convenient to the operation of the leased space as a restaurant. Appellee on the contrary testified that he had no other place for storage or for his carbonator or for his employees to change their clothes. This testimony demonstrates a reasonable need for the rooms, not that they are a mere convenience. After weighing the evidence, the trial court found that no space in the restaurant was available for dressing rooms or for storage of provisions. The appellant argues that other areas in the building could have been used for these purposes. But the trial judge found no equivalent facilities to have been designated to replace those the ap-

3. 32 Am.Jur., Landlord and Tenant, § 169, note 14; Annotation, 24 A.L.R.2d 123, 147.

4. Jackson v. Birgfeld, 189 Md. 552, 56 A. 2d 793; Owsley v. Hamner, 36 Cal.2d 710, 227 P.2d 263, 24 A.L.R.2d 112 and cases cited; Lambros Metals v. Tannous, 71 Ariz. 53, 223 P.2d 570; Henry A. Fabrycky, Inc., v. Nad Realty Corporation, 261 App.Div. 268, 25 N.Y.S.2d 347, re-

hearing and leave to appeal denied 261 App.Div. 987, 27 N.Y.S.2d 440.

5. 51 C.J.S., Landlord and Tenant, § 293.

6. Capital View Realty Co. v. Meigs, D.C. Mun.App., 92 A.2d 765, and cases cited.

7. Owsley v. Hamner, supra; Kaiser v. Magis, Sup., 120 N.Y.S.2d 511; 18th Avenue Pharmacy v. Wilmant Realty Corp., Sup., 95 N.Y.S.2d 534; 1 Tiffany, Landlord and Tenant, § 128.

pellee was using for dressing and storage rooms and certainly none was made in the aforementioned letter purporting to revoke permission to use them. The use made of the basement rooms was not merely a convenience but the only adequate space ever made available for such purposes as are here involved. For the proper conduct of his restaurant business on the leased premises, appellee has a reasonable and obvious need for such facilities. Therefore both tests governing the passage of easements by implication have been fairly met in this case.

■ Upon the making of the new lease for the purpose of continuing the restaurant enterprise, the privileges in the nature of easements already existent and accommodated in the basement rooms under the previous lease were not expressly reserved to the appellant as lessor. The judgment for the appellee for possession of the basement rooms should therefore stand.

We next discuss the issue raised by the claim for possession of the restaurant space. Paragraph 19 of the lease between the parties reads as follows:

"That the Lessor will, without warranting or guaranteeing the service, and subject to conditions herein provided, furnish, for lighting and other purposes, electricity in such amounts as the Lessor may decide is reasonable, reserving to the Lessor the right to discontinue said supply of electrical power or current without reduction of rent, *when in the opinion of the Lessor the use of the same by the Lessee is extravagant and unreasonable,* in which event the Lessee shall be permitted to have installed in the said suite his separate meter and to make personal and individual contract with the proper parties for his supply of electricity." (Italics supplied.)

On August 4, 1954, appellant notified appellee in writing that he had "decided

that a reasonable amount to be absorbed by [appellant] for electrical and water consumption [was] not more than twenty dollars ($20) per month" and requested appellee to have meters installed to cover water and electricity by September 1, 1954; further stating that if the meters were not so installed he would add $125.00 a month to the agreed monthly rental of $525.00. Counsel for appellant concedes that this paragraph of the lease contains no reference to water consumption and that accordingly his claim is limited to the dispute over the amount of electricity used.

Appellant's evidence on this ground is neither impressive nor persuasive. His building superintendent testified in substance as follows: That the bill for electricity for the building had increased since 1953, to what extent he did not know; that the number of other tenants had not changed; that a few years ago, prior to the present lease, appellee had converted his equipment from gas to electricity; he thought it possible the increase might be due to appellee's increased use of current because the use by the other tenants was not sufficient to account for the increased electric bills; but that he was unfamiliar with appellee's equipment and did not know whether he had added any since the witness became the superintendent in 1952. Appellant himself testified that to his knowledge no additional air-conditioning equipment had been installed by the other tenants; he did not know whether electric rates had been increased since the date of the lease; he did not know how much more electricity appellee was using now than at the commencement date of the lease; he did not know how much electricity appellee was using when appellant bought the building and has never known how much current appellee was using at any time during his tenancy. Appellee testified he had operated the restaurant since 1936; he had changed some of his equipment from gas to electricity in 1947; there had been no additional change since that time; he had no way

of knowing whether there had been an increase or decrease of current used since 1947; that he closes his restaurant one hour earlier at night and it is open a half day less since that year.

Paragraph 19 of the lease reserves to appellant the right to discontinue supplying electric current when in his opinion appellee's use of the same *"is extravagant and unreasonable"* in which event, appellee is *"permitted* to have installed * *

his separate meter. * * *." (Italics supplied.) The gravamen of appellant's complaint is that the use of electricity in his opinion is "excessive."

A careful consideration of all the evidence falls far short of demonstrating either "excessive" or "extravagant and unreasonable" use of electric current. The court was clearly right in finding for the appellee on this point.

Affirmed.