[Civ. No. 25356. Second Dist., Div. One. Mar. 8, 1962.]

DONALD FROOMER et al., Plaintiffs and Appellants, v. HOWARD B. DROLLINGER et al., Defendants and Respondents.

Irmas & Rutter and William A. Rutter for Plaintiffs and Appellants.

Musick, Peeler & Garrett for Defendants and Respondents.

LILLIE, J.—Involved in this proceeding are the construction and effect of a store lease respecting plaintiffs' rights as lessees to the use and enjoyment of a parking area directly behind the store. When defendants, as owners of the property, erected a two-story office building on the parking area, plaintiffs instituted the present action for declaratory and injunctive relief; reformation of the lease (to include the area in question) was also sought. From a judgment adverse to their claims that the parking area was an appurtenance of the demised premises in which they had an implied easement, plaintiffs have appealed.

Since 1950 plaintiffs have been engaged in the retail shoe business under the name of System Outlet Shoes. The type of operation assertedly requires a high volume of customers and, therefore, immediate-access parking facilities. Plaintiffs' store, originally leased in 1950 from defendants' predecessors in interest, is one of a group then owned by said predecessors and located on South Sepulveda Boulevard in the Westchester area of Los Angeles, the legal description thereof being Lots 35, 36 and 37 of Tract 14011. Behind the stores was a paved and striped area which was used as a parking area for customers of all stores in the group and referred to hereinafter as the "immediate-access parking area"; behind this area there was an alley on the other side of which were situated Lots 7, 8 and 9, also owned by defendants' predecessors but maintained by the Westchester Association, a nonprofit body as a "general parking area" for all of the stores in the entire neighborhood. (See following pages for diagrams.)

The original lease related to a part of Lot 36, known as 8911 South Sepulveda. In the latter part of 1957 plaintiffs commenced negotiations with the then owners for a long-term lease (and larger space) within a building located on a portion of Lot 35, known as 8913-8915 South Sepulveda. Several proposals were submitted by plaintiffs to one Burge, a broker employed by defendants' predecessors to manage the properties in the group. The first of these proposals was in the form of a letter, dated November 20, 1957. Therein specific reference was made, in addition to other proposed terms and conditions, to the "minimum rental" which would "include our pro rata share in any costs of maintenance of customer parking area on the asphaltic portion behind subject premises and also on Lot 9, in Tract No. 14011; it being further understood and agreed that we would have a continuing pro rata right to the use thereof by our customers, business invitees, patrons, employees, et cetera." The only other written proposal in evidence, save for the lease itself, was a further offer by plaintiffs (likewise in the form of a letter and dated February 17, 1958) in which reference to the immediate-access parking area was not mentioned.

The lease, herein sought to be reformed, was finally executed on April 28, 1958. Although there are specifications for the remodelling of the premises concerned, there is no reference in any of the specifications to the unimproved area in dispute. Paragraph 33 of the lease, however, makes rather detailed provision for parking accommodations on Lot 9 (beyond the alley): "In addition to the demised premises heretofore described, lessor agrees for the term of within lease to make available to the lessee its sub-leases [sic], concessionaries [sic], business customers, patrons and business invitees . . . a parking area, to be used in common with others, designated as Lot 9, Tract 14011 . . . Use of said Lot 9 shall be subject to the prevailing rules and regulations governing the use of other 'parking lots' 1 to 21 of said Tract 14011 . . ."

We summarize other testimony tending to support the judgment appealed from. Jules C. Goldstone, one of the predecessor-owners, testified that at no time did he grant rights to any of the tenants whereby they could use any of the immediate-access area. In this connection, it further appears, he actually negotiated for the termination of parking rights to the immediate rear of Lot 37 which had been granted by Goldstone's predecessor in interest; the same witness also stated (and quite understandably) that there was never any

discussion by him with any of the plaintiffs whereby rights would be acquired in this same area (the rear of Lot 37). No signs, bumpers, planter boxes or other permanent structures, peculiar to permanent parking areas, were erected in portions of the demised premises claimed to be an appurtenance; on the other hand, the area beyond the alley (Lots 7 through 9) was permanently dedicated by deed restriction

to parking and was subject of an agreement with a nonprofit body for its permanent maintenance in such capacity. Several photographs of the subject premises were received in evidence; the physical circumstances thus depicted speak for themselves, particularly with respect to plaintiffs' argument that Lots 7 through 9 were inadequate to handle the customer needs of their business operation.

The trial court found that it was not the parties' understanding that the lease (sought to be reformed) included a part of the unimproved area of Lot 35, nor that provision for the use thereof was omitted from said lease by mutual mistake or otherwise. A further finding was to the effect that the unimproved portion of Lot 35 was not an appurtenance to the premises, nor was its use reasonably necessary for the beneficial enjoyment of the leasehold interest sufficient to constitute an implied easement therein. Finally, the trial court found that the improvements erected by defendants on the theretofore unimproved portion of Lot 35 did not interfere with plaintiffs' access to either the rear entrance or the freight door installed in the rear of the leased building.

While the first of the three findings, just related, is not challenged, plaintiffs argue as grounds for reversal that (1) there is no support in the record for the trial court's determination that the disputed area was not an appurtenance acquired under the 1958 lease and (2) the facts at bar compel the conclusion that they had an implied easement in such area. An additional point on appeal complains of error in excluding certain opinion evidence of the witness Burge. There is merit to none of these contentions.

Although an appellate court must consider evidence most favorable to findings (*Gillespie* v. *Gillespie*, 121 Cal. App.2d 95, 97 [262 P.2d 607]), appellants argue the weight of the evidence and the credibility of witnesses at considerable length. They do not go so far as to assert that but one inference is reasonably deducible from the record; but they ignore the settled principle of the appellate process that the choice of conflicting inferences is for the trier of fact. Apparently, however, in support of the claim that the evidence preponderated in their favor, appellants point to certain matters which are said to warrant a result contrary to that reached below. Said to sustain the contention that the disputed area "belonged to" or was an "appurtenance" of the store premises, it appears that in the year 1950 (when they first became interested in leasing from respondents' predecessors) appellants were shown a plot plan where the area in question was designated as "parking lot." There was also evidence that the then agent for the predecessor-owners told appellants that the area was for customer-parking and justified the higher rental charged. Appellants, it is further pointed out, subsequently leased the store and used the area for customer-parking and deliveries of merchandise. Too, the lease was

renewed in 1955 and there were thereby granted to appellants the right to the store and its "appurtenances." During this same period of time they were told by the owners that the area was for the use of store tenants in the development and upon whom there devolved the obligation of its maintenance. Additionally, the 1958 lease granted the store premises and "appurtenances" to appellants, just as was done in the 1955 lease. After they moved into the 8913-8915 store, they used the area for parking and deliveries as they formerly did when they were tenants in the 8911 store. Other evidence, cumulative of appellants' claims and assertedly justifying a favorable inference, need not be related.

Opposed to the foregoing, not only do we have the physical circumstances and the testimony of Mr. Goldstone but we are also confronted with a written lease embodying proposals made by the appellants in which no mention was made of the disputed area; in addition, provision is made in some detail for parking in Lot 9 and *not* elsewhere. As the court observed at a closing session of the trial, "the extent of the parking rights, if any, [is] determined by the lease and the surrounding circumstances before and after." "As a general rule, everything that belongs to the demised premises or is used with or appurtenant to them, and is reasonably essential to their enjoyment, passes as incident to them unless specifically reserved." (30 Cal.Jur.2d, Landlord and Tenant, § 20.) The words "reasonably necessary to their enjoyment" constitute the crucial language in the above statement of the law. And who, we ask, is better fitted to judge of the reasonable necessity to the premises' enjoyment than the trier of the fact? In the case at bar, as also mentioned earlier, photographs of the entire area were received in evidence; they have been transmitted to this court under rule 10, Rules on Appeal. From experience in the trial court, we know that such evidence frequently serves the purpose of an actual view of the premises. In *Ng* v. *Warren,* 79 Cal.App. 2d 54 [179 P.2d 41], which involved a related problem, the trial court viewed the premises at the request of the parties: "What he observed is not part of the transcript of the record, but it is evidence which this court must assume supports the findings. [Citations.]" (P. 57.) The Supreme Court in *Owsley* v. *Hamner,* 36 Cal.2d 710, 719 [227 P.2d 263, 24 A.L.R. 2d 112], also approved this approach to a proper determination of the question. Appellants rely on *Owsley* as well as *Ng*; both, however, are affirmances of claims asserted by the lessee

and must be read in the light of the settled rule that judgments come to a reviewing court with certain presumptions as to their correctness. It is a fair inference from these exhibits (photographs) that the use of the disputed area was not "reasonably necessary to [the premises'] enjoyment."

Furthermore, where the express words of the grant are not sufficient, " ' "the implication which supplies those words flow either from a *reasonable necessity*, or, considering all the circumstances, from the *manifest intention* of the parties." ' " (*Mayer* v. *Hazzard*, 10 Cal.App.2d 1, 4 [51 P.2d 189].) Were we to sustain appellants' position, neither lessor nor lessee could rest on the assurance that protection is afforded by a written lease. When one considers that the parties had been negotiating for several months, it is a reasonable assumption that all matters deemed relevant or material were duly discussed and that the written instrument represented the actual meeting of the minds at that time.

The parking area was limited to Lot 9 and no more; the omission to provide for other parking areas, the trial court found, was not the result of mutual mistake or otherwise— and this finding is not formally challenged. Whatever other special privileges or permissive use may have been enjoyed in the past can have no contractual significance in the face of a carefully considered written lease containing no such provisions. We are unable to say as a matter of law that the criticized finding was incorrect.

What has heretofore been said is in large measure dispositive of appellants' second point that an implied easement was created by the circumstances at bar. Thus, "The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances." (*Fristoe* v. *Drapeau*, 35 Cal.2d 5, 8 [215 P.2d 729].) The trial court in the instant case has considered "all the facts and circumstances" and reached a determination contrary to that contended for on this ensuing appeal; such determination is based on substantial evidence. It is useless, therefore, for appellants to labor the point by extended reference to cases in this and other jurisdictions (Annot., 24 A.L.R. 123), although counsel's industry must be commended, and by a recital of evidence which would be more persuasive if addressed to the trier of fact. Appellants' argument is fallacious in one respect which requires comment. Quoting from the *Owsley* case, *supra*, at

page 717 that "everything which belongs to the demised premises or is used with, and appurtenant to, them and which is reasonably essential to their enjoyment passes as an incident to them, *unless specially reserved*" (emphasis added), it is contended that respondents' failure to reserve to themselves the area in dispute resulted in the passing of that portion of the premises. As discussed above, however, the phrase "reasonably essential to their enjoyment" is the crucial part of the statement; accordingly, respondents had no duty to "specially reserve" the area in question unless it was "reasonably essential to [the premises'] enjoyment."

The only other assignment relates to the asserted error in excluding evidence as to the "understanding" of the witness Burge respecting appellants' rights to the parking area. He was not a party to the lease, but only an agent with authority to submit proposals to the then owners. The pertinent excerpt from the transcript is as follows: "Q. (Mr. Irmas) At the time of the negotiations of the lease, sir, what was your understanding in regard to the use of this area behind the rear wall at 8913 and 8915 South Sepulveda; and to the alley? Mr. Clark: Objected to calling for a conclusion of the witness. The Court: Objection sustained." Counsel for appellants then offered to prove by the witness that it was Burge's understanding that the lease included the right of the appellants to utilize the disputed area for parking cars and loading freight. Witnesses must ordinarily testify to facts, leaving the drawing of inferences or conclusions to the jury or court. The witness was not asked what he heard but what he understood a person or persons to say. The ruling was clearly correct. (*Crusoe* v. *Clark*, 127 Cal. 341, 344 [59 P. 700]; Witkin, Cal. Evidence, § 183; 7 Wigmore, § 1962 et seq.)

The record in the instant case reveals no error requiring a reversal. Appellants are not, and never were, entitled to a trial de novo in this court. Perhaps the whole matter may be summed up in one statement in appellants' briefs: "These facts present a strong case for the implication of rights in favor of the plaintiffs." We do not say that they did not present "a strong case" but the contrary evidence justified the determination reached by the court below.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.