[Civ. No. 7019.   Third Dist.   May 6, 1944.]

WILLIAM A. REES et al., Respondents, v. RALPH E. DRINNING et al., Appellants.

Charles D. Sooy for Appellants.

Clarence N. Riggins for Respondents.

ADAMS, P. J.—Plaintiffs and defendants own adjoining residences fronting on the south line of Elm Street in Napa, defendants' property lying to the west of plaintiffs' lot. Both homes were built in 1938 by Will F. Bishop who then owned both properties and lots adjoining same on both sides. The Drinning house was built first, and was rented for several years. It was then sold by Mr. Bishop, and in January, 1942, came into the possession of defendants. After the construction of the house now owned by plaintiffs, Bishop rented it for a short time to George Provine, then sold it to Dr. George Loye. In December, 1938, Dr. Loye sold it to plaintiffs. The garage on the Rees property was built under two bedrooms at the rear of the house, and access thereto was gained by means of a driveway between the two houses, this driveway being in part on each lot. It is the right of plaintiffs to the use of the portion of this driveway which is upon defendants' lot that is in controversy here. No controversy over its use appears to have arisen until the present defendants acquired their property, after which time they threatened to obstruct the driveway, particularly the portion of same covering their land. Thereupon plaintiffs brought this action to establish their rights in the driveway, and to enjoin defendants from obstructing it.

Defendants filed an answer and cross-complaint denying that plaintiffs had the easement claimed by them, and praying that plaintiffs be decreed to have no right, title or interest in the land of defendants.

The trial court rendered judgment in favor of plaintiffs, and found, among other things, that while both properties were owned by Bishop and his wife they ''improved the same by erecting thereon residences and garages and laying out driveways thereon, and that, in the course of said improvements and while they owned all of said property, the said common owners erected the houses and garages now standing on the property so owned and occupied by plaintiffs and by the defendants, Drinnings, as aforesaid and laid out, constructed, and surfaced a driveway over the land lying between said two houses from Elm Street, a public highway, on which the houses front, to the rear of the lots on which they stand, which driveway was located partly on the land now owned by the plaintiffs and partly on the adjacent land now owned by the defendants, Drinnings, and is the only means of access by automobile to the rear of said lots, and to the garage built on

the lot now owned and occupied by the plaintiffs as aforesaid, and is necessary to the convenient use and occupation of plaintiffs' property for residence purposes." The decree which followed adjudged that plaintiffs and defendants own their respective properties subject to the easement of a mutual open right of way over the driveway, describing same as a strip of land 11 feet wide running from Elm Street and parallel to the common boundary line of the two properties a distance of 79 feet and five inches, 4½ feet in width thereof being on the land of defendants, and 6½ feet in width thereof on plaintiffs' land, and that both parties are entitled to use said driveway for access to their several properties.

From said judgment defendants have appealed, contending in this court that the use of the driveway prior to the severance of title was not of sufficient duration to give rise to an easement by implication, that there is no evidence in the record of an obvious and permanent roadway between the houses at the time of severance of title, and no reasonable necessity for a driveway on defendants' land, and that, in decreeing the limits of the easement the trial court gave effect to material alterations made by plaintiffs long after severance of title.

Plaintiffs, in support of their complaint, called Mr. Bishop who testified that at the time he owned both properties he laid out the driveway between the two houses, and surfaced it with what is commonly known as "black top"; that he had recently visited the property and believed that the driveway now there is the same driveway laid out by him; that he noticed no change in the location of the driveway except that a curb that Dr. Rees installed "shoved the driveway over a little toward Drinning." This curb was described as one running along the east side of the driveway from the house to the sidewalk a foot or so from the line of the house; and Mr. Bishop said that he thought it encroached a little bit on the driveway, that the curb was built to take care of the lawn when the ground was filled in.

Plaintiffs also called George Provine, who testified that he used the driveway when he lived on the Rees property, that he had visited the premises recently and that the houses and driveway seemed to him to be in about the same location as they were during his period of occupancy, except that the cement curb had not then been built and there were then no lawn or fences. Mrs. Rees testified that there had been no

change in the location of the driveway since they had bought the property some four years previously; that the driveway was surfaced when they went there. Dr. Loye testified that during his ownership and occupancy of the Rees property there was a driveway between the two houses which he used to gain access to his garage. When asked if there was a surface on it when he went there he said: ''A. It had—well, when I took over the property, the driveway was in poor condition and Mr. Bishop, who sold the property to me, put some gravel on for me to make the driveway. Q. I see. Put that the full width of that driveway? A. Yes. . . . MR. RIGGINS: Q. How much of the driveway did he put the gravel on? A. All of the driveway.'' Dr. Rees also testified that there had been no change in the house or the driveway since he had been living there. A surveyor who surveyed the properties located the driveway as covering the 6½ feet on plaintiffs' property and 4½ feet on defendants' lot; and the length as found by the trial court was the distance from Elm Street to a cross fence which had been erected by Dr. Rees, and not the full depth of the lots.

Defendants called a witness to testify as to the necessary width of a driveway, which he estimated to be from 92 inches to 20 feet, depending upon the driver; but said he thought 96 inches would give ample clearance.

Mr. and Mrs. Drinning testified in their own behalf, but their testimony is not of importance on this appeal, except that Mrs. Drinning stated that at least once since they acquired their property they had used the common driveway to have materials hauled into their back yard, and that such driveway was their only means of access to the rear of their property.

Whether the driveway was laid out by the owner of both lots prior to severance of title, whether there was an obvious and permanent driveway at the time of severance, and whether or not its location had been changed were questions of fact for the determination of the trial court. Its determination finds ample support in the evidence and will not, therefore, be disturbed by this court. The testimony of Dr. Loye, Mr. Provine, and Dr. and Mrs. Rees that there has been no change in the location of this driveway fully sustains the trial court's findings. Mr. Bishop's testimony that he laid out the driveway and topped it when he owned both lots, and Dr. Loye's testimony that when he bought the Rees property Mr.

Bishop put gravel on it for its full width, is sufficient to show that Mr. Bishop created the driveway and that, when he sold to Dr. Loye, he recognized it as an existing encroachment upon the Drinning lot, title to which he retained for some four years thereafter. While Mr. Bishop did testify that the curb built by Dr. Rees encroached a little bit on the driveway, it does not follow from that statement that it shoved the west line further over on defendants' lot; and whether it did or did not, was, as above stated, a question for the trial court which it has resolved against defendants. Furthermore, the trial court inspected the premises, and could see what is shown by the map in evidence, that the side lines of the driveway are defined by the width of the approach over the cement sidewalk in front of the premises, and that the curb built by Dr. Rees does not encroach upon the driveway.

Section 1104 of the Civil Code provides:

"A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed."

It is said in 9 Cal.Jur. 958, that "Three things are necessary thus to create an easement by implied grant: (1) A separation of the title; (2) before the separation takes place the use which gives rise to the easement must have been so long continued and so obvious as to show that it was intended to be permanent; and (3) the easement must be reasonably necessary to the beneficial enjoyment of the land granted."

If then, when Mr. Bishop conveyed to Dr. Loye, the use of the driveway had been so long continued and was so obvious as to show that it was intended to be permanent, and it was reasonably necessary to the beneficial enjoyment of the land granted, a grant of the easement is implied. (*Rosebrook* v. *Utz,* 45 Cal.App.2d 726, 729 [114 P.2d 715]; *Fischer* v. *Hendler,* 49 Cal.App.2d 319, 321-322 [121 P.2d 792]; *Quinlan* v. *Noble,* 75 Cal. 250, 252 [17 P. 69]; *Kallenburg* v. *Long,* 39 Cal.App. 731, 735 [179 P. 730]; *Nay* v. *Bernard,* 40 Cal.App. 364, 368-369 [180 P. 827]; *Cheda* v. *Bodkin,* 173 Cal. 7, 13-14 [158 P. 1025]; *Jersey Farm Co.* v. *Atlanta Realty Co.,* 164 Cal. 412, 415 [129 P. 593]; 9 Cal. Jur. 957-959.)

Appellants argue that the easement in controversy had not been so long continued and so obvious as to show that it was intended to be permanent, and, also, that it was not necessary to the enjoyment of plaintiffs' property because they have room enough—92 inches— for a driveway solely on their own property; but the court said in *Fischer* v. *Hendler, supra,* that "reasonably necessary to the beneficial enjoyment" of the property conveyed means no more than "for the benefit thereof," and that plaintiffs were not required to show that the easement as it existed was the only possible way of access to their garage. And as to length of the continuance of the use to give rise to an easement, that must necessarily be a relative term. ▪ Here the driveway was laid out when the Rees house was built and was used until the property was sold. It was therefore used for the maximum period possible under the circumstances; and the trial court was justified in finding from the evidence before it that the use was sufficiently long continued and the driveway sufficiently obvious and necessary for the enjoyment of plaintiffs' property to create the easement.

Also in this case, the fact should not be overlooked that it is conceded by plaintiffs that they took their property subject to the right of the owners of the defendants' property to use the driveway and the 6½ feet of width thereof on plaintiffs' land; also that defendants have no other means of access to the rear of their premises.

▪ Appellants make one other contention, to wit, that if the easement exists, the driveway should have been held to extend to the rear of both lots, and should not have been limited in length to the 79 feet and 5 inches decreed. We are unable to find anything in defendants' pleadings that indicates that they made this an issue in the case before the trial court. On the contrary, they denied that any easement whatsoever existed. They are not, therefore, in a position to complain that the driveway was limited in its length to the 79 feet, 5 inches established by the court.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 29, 1944.