[Civ. No. 14452.  Second Dist., Div. One.  Nov. 17, 1944.]

MICHELA NAVARRO, Respondent, v. LOUISE PAULLEY, Appellant.

Louis F. Labarere and John A. Cronin for Appellant.

Alfred E. Cate for Respondent.

DRAPEAU, J. pro tem.—The facts in this case are mostly undisputed, and mostly stipulated, and appear to be as follows: 40th Place, in the city of Los Angeles, runs east and west to Normandie Avenue. And, of course, Normandie Avenue runs north and south. On the northeast corner of the junction of these two streets is Lot 29 of West Park Tract,

No. 2. Lot 28 in the same tract is immediately north of and adjoining Lot 29. These lots front 50 feet on Normandie Avenue and are 132.76 feet in depth.

In 1921 both lots were owned by one person, who erected two frame residences on Lot 29, one at the front and one at the rear of the lot, and also, at the rear of the lot, a garage. This garage extended over the boundary line of Lot 29, approximately five feet north into Lot 28. Later on, this same common owner built a fence running west from the northwest corner of the garage to a point 50 feet west from the rear of the lot. At this point the fence turned a right angle south 5 feet to the boundary line between the two lots. Thus it appears that there was a garage at the rear of Lot 29, the north 5 feet of it built upon Lot 28, and there was also a fence running west from the north line of the garage, located about 5 feet north of the common boundary line of the two lots. At a point 50 feet west from the rear of Lot 28 the fence jogged back to the boundary line.

In this respect the defendant testified:

"They gave me the key and told me to look it over. So I looked over the front house first, it was vacant, and then I went to the back and looked around, went through the garage and looked where the fence was to see just how far my property went over, and I thought it was pretty nice because the garage and the house was all fenced in already."

Some years after the houses and garage were built a successor in the title sold Lot 28 to the plaintiff in this case. The plaintiff was told by the real estate broker who negotiated the sale that she was to get a lot a full 50 feet wide and that the garage and fence from Lot 29 extended into the lot she was purchasing. Then, subsequently to the conveyance of Lot 28, Lot 29 was sold to the defendant.

Within a few days after the defendant went into possession of Lot 29, the plaintiff advised her that the fence and garage were over the boundary line, and upon plaintiff's property, but the defendant did nothing about it. The plaintiff then offered to execute a lease of the garage to the defendant, so that it would not be necessary to move it, but still the defendant did nothing. Thereupon the plaintiff tore down the encroaching fence, put a new fence on the boundary line between the two lots, and commenced this action to quiet title.

The trial court found that the plaintiff was the owner of all of Lot 28 and judgment followed quieting title in her.

Appellant claims an easement by implication for the maintenance of the garage and the fence on plaintiff's property. In support of this claim appellant asserts that the facts in this case bring it within the rule first enunciated in California in *Cave* v. *Crafts,* 53 Cal. 135, as follows:

"When the owner of lands divides his property into two parts, granting away one of them, he is taken by implication to include in his grant all such easements in the remaining part as are necessary for the reasonable enjoyment of the part which he grants, in the form which it assumes at the time he transfers it."

This rule has been approved in many California cases. (*Quinlan* v. *Noble,* 75 Cal. 250 [17 P. 69]; *Jersey Farm Co.* v. *Atlanta Realty Co.,* 164 Cal. 412 [129 P. 593]; *Cheda* v. *Bodkin,* 173 Cal. 7 [158 P. 1025]; *Rosebrook* v. *Utz,* 45 Cal. App.2d 726 [114 P.2d 715].) It is codified in Civil Code, section 1104. Discussion and citation of numerous cases may be found in 9 California Jurisprudence, and supplements thereto; also in 9 McKinney's Digest, Easements, sections 15, 16, 17, and supplement thereto; and also in 13 Southern California Law Review, 525.

Inasmuch as an easement by implication takes real property or an interest therein from the record owner and vests it in another, there are certain indispensable conditions which must exist at the time of the conveyance from the common source of title before courts will enforce the implied grant. These conditions are set forth in *Fischer* v. *Hendler,* 49 Cal.App.2d 319 [121 P.2d 792]. Among them is the requirement that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted. And this is a question of fact for the trial court. (*Cave* v. *Crafts,* 53 Cal. 135; *Beem* v. *Reichman,* 36 Cal.App. 258 [171 P. 972]; *Grimmesey* v. *Kirtlan,* 93 Cal.App. 658 [270 P. 243]; *Fischer* v. *Hendler, supra; Rothschild* v. *Wolf,* 20 Cal.2d 17 [123 P.2d 483]; *Slater* v. *Shell Oil Co.,* 39 Cal.App.2d 535 [103 P.2d 1043].)

In the development of the law of easements in this country, for a time our courts held that an easement by implication might not pass unless it was strictly and absolutely necessary to the enjoyment of the tenement granted. (57 Am.Dec. 762.) So, where a grantor having built two houses on adjacent lots, with a chimney between them resting wholly on one of the lots,

conveyed the other lot, it was held that no easement to the chimney passed to prevent the grantor tearing it down, because it was not strictly necessary. (*Buss* v. *Dyer*, 125 Mass. 287.)

But the better and now prevailing view is that in order to survive the severance the easement must be reasonably necessary. This is the rule in California. A statement of the law, with citation of authorities from the several states, may be found in 28 Corpus Juris Secundum 692, as follows:

"An easement corresponding to a use to which one part of the property has been subjected for the benefit of another part will not be implied on a severance of ownership unless the use is necessary for the enjoyment of the dominant tenement; mere convenience is insufficient. Some courts require that the use be strictly necessary; but the weight of authority sustains a rule less exacting than that of strict and indispensable necessity, namely, that the degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. The test of necessity is whether the party claiming the right can, at reasonable cost, create a substitute on his own estate. It has been held that the rules as to ways of necessity should be applied."

In this case the trial court heard the testimony and considered the matter. In the performance of its duty the court determined against the defendant and appellant the essential fact of reasonable user at the time of the severance. With that determination this court can have nothing to do, if there be substantial evidence to support it. It is apparent that that part of plaintiff's lot enclosed by the fence was neither absolutely nor reasonably necessary to defendant's use of the lot conveyed to her. So far as the garage is concerned, it may well be that the trial court drew the inference from the testimony that it could be moved from its location straddling the boundary line to a location entirely on defendant's property without any great hardship to the defendant. There is, therefore, substantial evidence to support the findings of fact, and the judgment.

The judgment is affirmed.

York, P. J., and White, J., concurred.