[Civ. No. 56447. Second Dist., Div. Five. Sept. 16, 1980.]

JOHN F. LEONARD et al., Plaintiffs,
Cross-defendants and Respondents, v.
BROWNLEE W. HAYDON et al., Defendants,
Cross-complainants and Appellants.

**COUNSEL**

Fadem, Berger & Norton and Michael M. Berger for Defendants, Cross-complainants and Appellants.

Dreisen, Kassoy & Freiberg, Thomas A. Freiberg, Jr., and Robert P. Friedman for Plaintiffs, Cross-defendants and Respondents.

**OPINION**

DOWDS, J.*—Plaintiffs and cross-defendants (the Leonards) and defendants and cross-complainants (the Haydons) own residences on adjoining parcels of real property in an area in the Santa Monica Mountains of Los Angeles County known as Rustic Canyon. The vicinity of both properties is reached by a private road from Sunset Boulevard (Evans Road) to which both parties have access and which is not in dispute. Their controversy involves a driveway from or extension of Evans Road which leads to the two residences and which, except for a turnaround at the end which is partly on each property, is entirely on the Leonards' land. The Leonards, in their complaint, sought to quiet title to the driveway, a declaration that the Haydons have no interest in it and damages for trespass. The Haydons, in their cross-complaint, sought a declaration of their rights to an easement over the driveway and to quiet title to it. A jury trial resulted in a special verdict that the Haydons did not have an implied easement over the driveway, that they used it with the permission of the Leonards, which had been terminated, and that the Leonards had suffered $500 damages from wrongful use by the driveway by the Haydons. A judgment conforming to the special verdict was entered, from which the Haydons appeal.

The Haydons' motions for a new trial or for judgment notwithstanding the verdict was denied and on their appeal from the judgment they ask us to review the correctness of these rulings, which we may do.

---

*Assigned by the Chairperson of the Judicial Council.

(*City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860, 872 [135 Cal. Rptr. 647, 558 P.2d 545].) The motion for judgment notwithstanding the verdict was made on the ground that there was no substantial evidence to support the jury verdict. The motion for new trial, while noticed on all statutory grounds, was supported by points and authorities which urge that the jury's verdict was contrary to the evidence.

The case was tried and is argued on appeal on the Haydons' contention that they had an implied easement in the driveway as opposed to a revocable license. As noted above, the jury found against this contention.

Civil Code section 1104 provides: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." *Fristoe* v. *Drapeau* (1950) 35 Cal.2d 5, 8 [215 P.2d 729], recognizes an "additional element usually required at common law for the creation of an easement by implication, i.e., that the easement should be reasonably necessary for the enjoyment of the property conveyed." ■ The *Fristoe* court cited *Fischer* v. *Hendler* (1942) 49 Cal.App.2d 319, 322 [121 P.2d 792], which set forth the following elements necessary to create an easement by implied grant: "(1) A separation of the title; (2) before the separation takes place the use which gives rise to the easement shall have been so long continued and so obvious as to show that it was intended to be permanent; and (3) the easement shall be reasonably necessary to the beneficial enjoyment of the land granted." *Orr* v. *Kirk* (1950) 100 Cal.App.2d 678, 681 [224 P.2d 1], recites the same requirements and points out that the first element implies unity of ownership at some former time.

The parties stipulated that Ira and Marjorie Hilgers purchased both properties on April 30, 1945, and that on February 7, 1947, they transferred the lot now owned by the Leonards to Mr. and Mrs. Morgan Evans and the lot now owned by the Haydons to Mr. and Mrs. Bernard Evans. Thus there is no dispute that the property was at one time in common ownership and then divided.

The evidence was conflicting as to whether there was such continued and obvious use of the driveway before division of the properties as to

show the driveway was intended to be permanent. Morgan Evans (the Leonards' predecessor in title) testified that at the time he acquired the property there was no sort of a roadway in the area of the present driveway, nothing to indicate that a car had used the area, although there might have been a horse trail somewhere in the general area. He stated that he and other family members who owned adjoining properties roughed out building sites and had the driveway bulldozed to enable the delivery of concrete and lumber. During construction of the house the surface of the driveway was rock and oil and at the conclusion of construction a light coat of asphalt was added. He also testified that his brother Bernard (the Haydons' predecessor in title) had been living out of the county but constructed a weekend cottage on the property now belonging to the Haydons, intending to build a permanent residence at a future time, and that he (Morgan) had invited Bernard to use his driveway as a matter of convenience until he built his home. Morgan Evans also testified that before the Haydons moved into Bernard Evans' house, at a time when Morgan had a strong impression that Mr. Haydon was anxious to acquire Bernard's property, he (Morgan) had a conversation with Mr. Haydon in which he pointed out the boundary markers and that Bernard was using Morgan's driveway with his permission and invited Mr. Haydon to use his driveway until such time as he put in his own.

On the other hand, Emil Sandmeier, who had been from 1931 through 1936 and again from 1940 to 1945 an employee of the family of Will Rogers, a previous owner of the property, testified that Will Rogers had horse sheds in the area that is now the Leonard and Haydon properties and that in 1934 a road was built up the canyon to the horse sheds and beyond to a cabin. He was unable to say whether the road had the same alignment as the present road to the Leonard and Haydon properties. Charles Mackintosh, a structural engineer, examined three aerial photographs bearing dates in 1940, 1946, and 1971 and gave his opinion that each photograph showed a road in the same location as the driveway on the Leonard property.

There was substantial evidence before the jury that before the separation of title there had not been such long continued and obvious use of the driveway area as to show that it was meant to be permanent and the judgment, and the denial of the motions for judgment notwithstanding the verdict and for new trial, cannot be successfully attacked on that basis. Counsel for the Haydons asserts that the trial court, in ruling on his motions, agreed that there was no conflict in the evidence as to the

use prior to the division of title. In fact, the trial judge said that "maybe" there wasn't any factual question on the issues other than the reasonable necessity of the easement, that he was in the middle of another trial and had not had an opportunity to go over his notes but would do so, that he didn't recall any conflict, and that in Will Rogers' time there had been a road from Sunset Boulevard up to the cabin that a truck was driven on. He then called for letter briefs from counsel and, following the receipt of such briefs, denied the motions. The comments of the trial judge on this issue do not compel reversal.

■ Appellants further contend that "the trial court was misled by the Leonards into applying an aberrational standard of reasonable necessity." The jury was instructed as to the required elements of an implied easement as set forth above, including "[t]he easement must be reasonably necessary for use of the Haydons' property." It was further instructed: "In determining whether the easement is reasonably necessary to the use and benefit of the Haydons, you can consider whether the Haydons can at a reasonable cost create a substitute on their own property." Appellants assert this instruction was based on *Navarro* v. *Paulley* (1944) 66 Cal.App.2d 827 [153 P.2d 397], and that, to the extent that case purports to establish a cost test, it is contrary to all other California authorities. They also contend that the trial court considered the cost issue to be determinative and that in so doing it erred.

Taking the latter point first, the jury was not instructed that the cost of an alternative means of access was determinative—only that it was a factor they could consider in respect of the reasonable necessity of the easement. Turning again to the trial judge's comments at the hearing of appellants' motions after judgment, he stated that there was a conflict in the evidence as to whether the road was reasonably necessary, that there was some dispute about the cost of another road, indicated that the dollar cost of an alternate road and the fact that there was a place to put in such a road were relevant to the jury's inquiry and that he should not overturn the jury's findings unless it clearly should have reached a different result and called for letter briefs. Appellants' contention that the trial judge considered the cost issue to be determinative is not supported by the record.

In *Navarro* v. *Paulley, supra*, 66 Cal.App.2d 827, two adjoining lots were owned by one person who constructed a garage at the rear of the properties, principally on one of the lots but encroaching five feet into the adjoining lot. The lot with the encroaching five feet of garage was

■

subsequently sold to plaintiff in that action and the other lot to the defendant therein. After defendant refused plaintiff's offer to lease the garage, plaintiff sued to quiet title and was successful in the trial court. The Court of Appeal affirmed, stating: "So far as the garage is concerned, it may well be that the trial court drew the inference from the testimony that it could be moved from its location straddling the boundary line to a location entirely on defendant's property without any great hardship to the defendant. There is, therefore, substantial evidence to support the findings of fact, and the judgment." (*Id.* at p. 830.)

It pointed out that a requirement for an implied easement is that the easement must be reasonably necessary to the beneficial enjoyment of the land granted and that this is a question of fact for the trial court, explaining: "In the development of the law of easements in this country, for a time our courts held that an easement by implication might not pass unless it was strictly and absolutely necessary to the enjoyment of the tenement granted. (57 Am.Dec. 762.) So, where a grantor having built two houses on adjacent lots, with a chimney between them resting wholly on one of the lots, conveyed the other lot, it was held that no easement to the chimney passed to prevent the grantor tearing it down, because it was not strictly necessary. (*Buss* v. *Dyer*, 125 Mass. 287.)

"But the better and now prevailing view is that in order to survive the severance the easement must be reasonably necessary. This is the rule in California. A statement of the law, with citation of authorities from the several states, may be found in 28 Corpus Juris Secundum 692, as follows:

"'An easement corresponding to a use to which one part of the property has been subjected for the benefit of another part will not be implied on a severance of ownership unless the use is necessary for the enjoyment of the dominant tenement; mere convenience is insufficient. Some courts require that the use be strictly necessary; but the weight of authority sustains a rule less exacting than that of strict and indispensable necessity, namely, that the degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. The test of necessity is whether the party claiming the right can, at reasonable cost, create a substitute on his own estate. It has been held that the rules as to ways of necessity should be applied.'" (*Id.* at pp. 829-830.)

Appellants, as mentioned, consider the holding of *Navarro* to be "aberrant" and refer us to *Rees v. Drinning* (1944) 64 Cal.App.2d 273 [148 P.2d 378]. In that case plaintiff and defendant owned adjoining houses with a driveway, between them and partly on each lot, which had been built by a previous owner of both properties. In a court trial an implied easement was recognized, the court finding that the driveway "'. . . is the only means of access by automobile to the rear of said lots, and to the garage built on the lot now owned and occupied by the plaintiffs. . . and is necessary to the convenient use and occupation of plaintiffs' property for residence purposes.'" (*Id.* at pp. 274-275.) On appeal the defendants in that case contended inter alia that there was no evidence of a reasonable necessity for a driveway on defendants' land. In discussing and disposing of this issue, the *Rees* court said: "Appellants argue that the easement in controversy had not been so long continued and so obvious as to show that it was intended to be permanent, and, also, that it was not necessary to the enjoyment of plaintiffs' property because they have room enough—92 inches—for a driveway solely on their own property; but the court said in *Fischer v. Hendler, supra,* that 'reasonably necessary to the beneficial enjoyment' of the property conveyed means no more than 'for the benefit thereof,' and that plaintiffs were not required to show that the easement as it existed was the only possible way of access to their garage. And as to length of the continuance of the use to give rise to an easement, that must necessarily be a relative term. Here the driveway was laid out when the Rees house was built and was used until the property was sold. It was therefore used for the maximum period possible under the circumstances; and the trial court was justified in finding from the evidence before it that the use was sufficiently long continued and the driveway sufficiently obvious and necessary for the enjoyment of plaintiffs' property to create the easement.

"Also in this case, the fact should not be overlooked that it is conceded by plaintiffs that they took their property subject to the right of the owners of the defendants' property to use the driveway and the 6 1/2 feet of width thereof on plaintiffs' land; also that defendants have no other means of access to the rear of their premises." (*Rees v. Drinning, supra,* 64 Cal.App.2d at p. 278.) The judgment of the *Rees* trial court recognizing the implied easement was affirmed.

We perceive nothing in the holding of the *Rees* case that is in conflict with *Navarro* or which compels reversal of the instant case. It merely held that evidence that a driveway could be constructed somewhere else

on plaintiff's property did not compel overturning the trial court's finding that the existing driveway was necessary. As our appellants remind us, the *Rees* court cites *Fischer* v. *Hendler, supra*, 49 Cal.App.2d 319, for the proposition that "reasonably necessary to the beneficial enjoyment of the property conveyed means no more than 'for the benefit thereof,'..." In the *Fischer* case the defendant, when she owned two adjoining properties, graded and cemented an area so that rain and surface waters would flow from one lot to another through an opening in a curb between them. The upper lot was sold and came into the ownership of plaintiffs in that case. Defendant therein closed the opening in the curb, causing flooding on plaintiffs' property. The trial court determined that plaintiffs had an implied drainage easement and this judgment was affirmed on appeal. What the *Fischer* court actually said in regard to reasonable necessity was: "...This rule [of implied easements] is embodied in section 1104 of the Civil Code which provides:

"'A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.'

"Under the code section the courts of this state have set forth certain elements necessary to create an easement by implied grant. The following things are required: (1) A separation of the title; (2) before the separation takes place the use which gives rise to the easement shall have been so long continued and so obvious as to show that it was intended to be permanent; and (3) the easement shall be reasonably necessary to the beneficial enjoyment of the land granted. (*Beem* v. *Reichman*, 36 Cal.App. 258, 263 and 264...; *Grimmesey* v. *Kirtlan*, 93 Cal.App. 658, 664....) We are referring here to an easement implied in the grant of severance of the dominant and servient estates as outlined in section 1104 of the Civil Code, as distinguished from a necessary easement, or 'way of necessity.' As to the former the authorities uniformly hold to the three essentials above noted when that question has been directly presented. There is little, if any, difference between the expression 'reasonably necessary to the beneficial enjoyment of the land granted' and the expression found in the code section 'for the benefit thereof.' In the case here the respondents successfully proved that the easement claimed was 'reasonably necessary to the beneficial enjoyment of the land granted' and thus met the code re-

quirement that it was 'for the benefit thereof.' They were not required to show that the drain was the only method possible to carry excess water from their land, or that, because of such absolute necessity, the grantor must have been deemed to have intended to include the right of way in the grant. Relying upon the showing of the apparent and obvious use of the drain for a long period of time preceding the severance, they met the terms of the statute by the proof that it was 'reasonably' necessary (not absolutely necessary, nor merely convenient) for the beneficial use of the land granted. The distinction between an easement by implication arising out of apparent and continued use, and an easement by necessity is clearly shown in 17 Am.Jur. 948, 959; 28 C.J.S. 691, 695; 9 Cal.Jur. 957, 967-969.

"The undisputed facts of the instant case show that all of these required elements are present. (1) Appellant owned both lots until 1937 when she separated title by transferring lot 18 to respondents' predecessor in interest. (2) In 1932 appellant graded and cemented the backyard of lot 18 so that the surface and rain water would flow through the opening in the curbing onto lot 19. This construction was of a permanent character and the drainage system was used continuously by appellant for five years prior to the separation of title. Such long continued use plus the fact that the grading and the opening in the curb were obvious and visible at all times indicates unquestionably appellant's intention that it should be permanent. (3) The drainage system involved had been used for a period of seven and one-half years, and the evidence shows that when appellant closed the opening in the curb the water accumulated in the backyard of lot 18 thereby causing the yard and its facilities to become less accessible to ordinary use. We must conclude, therefore, that the easement was necessary for the reasonable enjoyment of the parcel sold in the form which it assumed at the time of the transfer. (*Grimmesey* v. *Kirtlan, supra.*)" (49 Cal.App.2d at pp. 322-323.)

We observe nothing in *Fischer*, or in *Rees* either for that matter, to indicate that the cost of an alternate to the use claimed to give rise to an easement may not be taken into consideration in determining reasonable necessity. It will be observed that the language upon which appellants rely, as well as somewhat comparable language in a text[1] which they cite to us, appears in the context of distinguishing the "rea-

---

[1] 3 Miller & Starr, Current Law of California Real Estate (rev. ed. 1977) section 18:26, page 306.

sonable" necessity, which is a requirement of an implied easement, from the "strict" necessity which is an element of an easement or way of necessity. Indeed, the language of the *Fischer* case that, in order to have an implied easement, its use must be more than "merely convenient" to the alleged dominant tenement seems to us to imply that the cost of an alternate might well be considered.

Returning to appellant's contention that *Navarro* is "aberrant," our investigation discloses that it has been cited without criticism and with apparent approval once by the Supreme Court (*Owsley* v. *Hamner* (1951) 36 Cal.2d 710, 719 [227 P.2d 263, 24 A.L.R.2d 112]) and three times by the Court of Appeal (*Gagnon* v. *Adamson* (1953) 122 Cal. App.2d 253, 258 [264 P.2d 620]; *Jordan* v. *Henck* (1958) 166 Cal. App.2d 321, 324 [333 P.2d 117]; and *McCarty* v. *Walton* (1963) 212 Cal.App.2d 39, 43 [27 Cal.Rptr. 792]).

Further, in discussing implied easements and the requirement of necessity, the Restatement of the Law of Property (1944) states in section 476, comment g: "If the necessity of an easement is such that without it the land cannot be effectively used, nothing less than explicit language in the conveyance negating the creation of the easement will prevent its implication. If some use may be made, or if an alternative to the easement which might otherwise be implied can be secured, the implication becomes subject to control by other circumstances. Thus, the expense and effort necessary to secure a substitute by the conveyor may not be so disproportionate but that it may be assumed he was intended to suffer it, while like expense to the conveyee may warrant the inference that he was not intended to suffer it. While necessity alone justifies the inference of an easement without regard to other circumstances if the land cannot be used without it, as necessity decreases a point is reached where necessity without reference to any prior use may justify the implication of an easement in favor of the conveyee though a like necessity would not justify an implication in favor of the conveyor. Eventually, without its being possible to draw any precise line, necessity will not be sufficiently great to justify the implication except as it is strengthened by reference to a prior use of the land. In the different situations that may appear, a constantly decreasing degree of necessity will require a constantly increasing clearness of implication from the nature of the prior use. Accordingly, *no precise definition of necessity can be made.*" (Italics added.) Whatever may be the proper application in other cases

of the language that "[t]here is little, if any, difference between the expression 'reasonably necessary to the beneficial enjoyment of the land granted' and the expression...'for the benefit thereof'" (*Fischer v. Hendler, supra*, 49 Cal.App.2d at p. 322), there was no error in the instant case in allowing the introduction into evidence of the cost to the Haydons of constructing a driveway on their own property and instructing the jury it could consider such evidence on the issue of reasonable necessity.

■ The question of whether an easement by implication arose is a question of fact for the determination of the trier of fact in the trial court. (*McCarty v. Walton* (1963) 212 Cal.App.2d 39, 43 [27 Cal.Rptr. 792].) As previously indicated, a subsidiary question of fact is whether the claimed easement is reasonably necessary. Evidence before the jury included Morgan Evans' testimony that he offered the use of his driveway to his brother Bernard *as a matter of convenience* until he built his own home, and testimony by two engineers that an alternate driveway could be built entirely on the Haydons' land. Yoshio Higashi estimated the cost of such an alternate at $12,500 whereas in the opinion of Charles Mackintosh the cost would be $14,100.[2] ■ The determination of the jury that an implied easement did not arise is justified both by the evidence as to the extent of the use of the driveway before division of the properties and by that relating to the availability of an alternate means of access and the trial court did not err in denying appellants' motions for a judgment notwithstanding the verdict and for a new trial.

The judgment is affirmed, respondents to recover their costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied October 15, 1980, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied November 12, 1980.

---

[2] Mr. Mackintosh stated that $20,000 should be added to the cost if the City required Evans Road to be widened but Mr. Higashi expressed the understanding and opinion that this probably would not be required.