Filed 10/28/21  Badger v. Terribilini CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIM BADGER<br>    Plaintiff and Appellant,<br><br>v.<br><br>JEANNE TERRIBILINI,<br>    Defendant and<br>    Respondent. | A161178<br><br><br>(Sonoma County<br>Super. Ct. No. SCV261504) |

Plaintiff Tim Badger appeals from a post judgment order denying his motion under Code of Civil Procedure[1] section 2033.420 for expenses incurred in proving up facts in requests for admission (RFAs) that were denied by defendant Jeanne Terribilini.  We affirm.

## FACTS

### A.    Background

Joseph and Lillian Badger (parents of Tim Badger, Charles Badger, and Jeanne Terribilini)[2], were the original owners of four adjoining parcels of land: parcels 8, 23, 24, and 41.  In 1989, Joseph and

---

[1]    All undesignated statutory references are to the Code of Civil Procedure.

[2]    In order to avoid confusion and with no disrespect intended, hereinafter we use first names.

1

Lillian transferred title of the four parcels to their three children, making them joint tenants with Joseph and Lillian. When Joseph passed away in 1993, the children remained on title as joint tenants with Lillian. Before Lillian's death, she quit claimed all of her interests to the children by deeds filed in 1994. At the time of this lawsuit, Tim held title to Parcels 23 and 41 (a total of approximately 181 acres); Charles held title to Parcel 24 (approximately 76 acres), and Jeanne held title to Parcel 8 (approximately 168 acres).

In 1984, with his father's permission, Tim began building a residence on the parcels he now owns. In 1984 and 1985, Tim developed a water system to deliver water from a spring located on the parcel now owned by Jeanne. The water system consisted of approximately 6,000 feet (1.3 miles) of three-quarter inch PVC pipe and a reverse leach field system.[3] The next year, 1986, Tim moved into his house and used the spring and water delivery system as his sole water source. In 1988, Charles arranged for the installation and paid for a horizontal well at the spring, which was used exclusively for the parcels owned by Tim and Charles. Tim engineered a five-gallon collection bucket with a sieve to eliminate debris that clogged the delivery system installed at the site of the horizontal well.

The parcels owned by Tim and Charles are improved with residences and Jeanne's parcel is undeveloped. Because Jeanne's parcel is landlocked, the 1989 deeds granted her a right of way for

---

[3]     A PG&E access road runs north of the property line on Parcel 24 (owned by Charles) onto Parcel 8 (owned by Jeanne) and up to a PG&E bridge over a creek. Just before the bridge, Tim and Joseph installed a " 'spur road,' " which runs perpendicular to the PG&E road and terminates at the spring. The PVC pipe (1.3 miles) was located on the south (or right) side of the spur road and terminated at the spring.

roadway and utility purposes over the parcels deeded to Tim and Charles. While the 1989 deeds did *not* grant any easement in favor of the parcels owned by Tim and Charles for water access, Tim continued to use the spring and water delivery system that were located on Jeanne's parcel.

In 1991, after a hard freeze, Tim and Charles installed new PVC pipe buried at a depth of six to eight inches to prevent future damage from freezing. Tim also installed water storage tanks on his parcels. By the time of this lawsuit, Tim had installed eight water storage tanks with a total capacity of 20,500 gallons, which was the source of water for several residences that he built over the years on his parcels. The trial court found Tim had engaged in on-going maintenance of the PVC pipe and water delivery system, spending hundreds of hours in labor and approximately $38,000 "out of pocket" as a rough and conservative "estimate" since 1984.

The water delivery system was used continuously as the exclusive source of water for the parcels owned by Tim and Charles until 2011. At no point in time up to 2011 had Tim and Jeanne spoken about his use of the spring on her parcel and he never asked for permission to access the spring or to maintain the water delivery system. In 2012, Charles drilled a well on his parcel and no longer relied on the spring water from Jeanne's parcel.

In October 2017, CalFire undertook fire suppression efforts that included bulldozing fire lines to protect the area from wildfires; as a result, the PVC pipe to the water delivery system was destroyed and Tim's parcels were without water. Tim hired a contractor to reinstall the PVC pipe and Charles told Jeanne that Tim had hired the

3

contractor. In response, Jeanne called the contractor and denied him permission to enter her property for the purpose of reinstalling the PVC pipe, this time in the center of the roads. This lawsuit ensued.

## B. Trial Court Proceedings

By his complaint, Tim sought to quiet title to an "easement" that he used to access the spring and his water delivery system that had been located on Jeanne's parcel.[4] He also sought nuisance damages based on Jeanne's refusal to allow his contractor to access her parcel to reinstall the PVC pipe for the water delivery system.

The case was tried in two phases. The first phase was a bench trial lasting six days and included a site visit by the trial judge. The trial court found Tim had an easement by implication to access the spring and the water delivery system that had been located on Jeanne's parcel. In light of the decision, the court found the issue of Tim's entitlement to an irrevocable license was rendered moot. In the second phase, a jury returned a verdict in favor of Tim on his cause of action for nuisance and awarded him $15,200.

## C. Trial Court's Statement of Decision

In its statement of decision, the court made numerous factual determinations that required it to assess all the evidence, including the credibility of witnesses. Its fact summary (in the FACTS section) was "incorporated in and applicable to [its] analysis on the questions of the

---

[4] Tim's complaint also named Charles as a defendant because a portion of the water delivery system runs across a portion of Charles' parcel. Shortly before trial, Tim and Charles settled the matter and Charles assigned to Tim, without warranty, all of Charles' right, title and interest in the water spring and water delivery system. Charles was dismissed from the complaint and his cross-complaint was dismissed in full.

4

existence of both an implied easement and irrevocable license," with the court making additional factual findings in addressing the question of the existence of an irrevocable license.

In determining whether Tim held an easement by implication, the court addressed Joseph and Lillian's intent regarding the conveyances. "In addressing the issue of intent in this case, both sides offer evidence of express statements [made] by Joseph on the topic. Tim says his father told him there was no need to include water rights [in] the property deeds as they were established. Charles says his father told him that he would not include specific water rights in the deeds because each parcel needed to develop its own source of water. What can the court make of this evidence? Not much. And not simply because it is in apparent conflict. Rather, the purported statements are from decades ago, which the court cannot discount in assessing reliability even crediting the earnestness and intent to be accurate of the hearers. But also because the court cannot discount the possibility that *both* statements were made and neither revealed a clear intent with regard to an easement. Given the inability to assign much weight, if any, to this evidence the court finds it to be much more persuasive and convincing to look at the actual *conduct* of Joseph and Lillian with regard to the division of their land. (Italics in original.)

"In 1994, Lillian had a right to, and did, use water from the spring, as she had done for almost two decades before. When she quit claimed her interest to her children, element one was met. The owner of property transferred a portion of that property to another. . . . [¶] . . . [¶] At the time of the transfer, Lillian had be[en] using water from the spring. The water was the only source of water for her residence and

was necessary to make it habitable. . . . While there was no evidence Lillian was involved in any of the maintenance or installation of the system, she was surely aware of it. . . . The court concludes Lillian's prior existing use of the spring water and its delivery system was known to Lillian and Tim and [Jeanne] in 1994. The court also concludes it was of a nature that the parties must have intended or believed that the use would continue, primarily because if not, Lillian would immediately have been without water and could not have continued to live in her residence, which she did for more than another year. It also would have had the effect of immediately leaving her son and his family without any source of water. . . . The water system was anything but temporary having been in existence in one form or another since the 1970s. The fact that the pipe was reinstalled and buried in 1991 further supports the conclusion that it was intended to be permanent. . . . [¶] As to whether the easement is reasonably necessary to the use and benefit of Tim's property, this must be answered in the affirmative. . . . Here, the evidence was that the water delivered from the spring in 1994 was the only source of domestic water available for the residences on the property. It is a reasonable conclusion to draw that in light of the facts, continued use of water from the spring was reasonably necessary to the beneficial enjoyment of Tim's property."

The court concluded Tim had met his "burden of showing by a preponderance of the evidence clear evidence" that Lillian intended to include the right to use water from the spring when she quit claimed the property to Tim and Jeanne, and hence an easement by implication was thereby created in favor of Tim's parcels.

6

The court also concluded the scope of the easement was "no greater, or different, from that use to which it [had] been historically put. The location of the pipe shall be on the easterly edge of the PG&E road and the southerly edge of the spur road on [Jeanne's] property. . . . The court finds the description . . ., combined with the landmarks on the ground observed during the site visit, to be sufficiently detailed to establish certainty as to the location of the implied easement. . . . [¶] The pipe used can be no larger than three-quarter inch. It can be buried as the conditions of the land allow but in no case greater than eight inches. Tim has exclusive use of the horizontal well and 'upper' reverse leach field (that is the one he installed which is located closer to the horizontal well) as a backup source of water. . . . [¶] Tim is not entitled to exclusive use of the waters of the spring, nor does he have the ability to exclude [Jeanne] from the location or use of the water. [Jeanne] can take water from the spring with her own improvements and would owe no fee for use of spring water on her own land."

Although the court found Tim's claim of an irrevocable license was rendered moot in light of the court's finding of an easement by implication, the court addressed the alternate theory.

"The evidence was that Tim did not ask for permission from [Jeanne] to go on her property or use the water from the spring. [Jeanne] had lived on the property now owned by Tim in 1974 for a few months. She used the water from [the] . . . system. She visited the property every few weeks when her children were small and after 2010 five or six times a year. [Jeanne] did not discuss Tim's water use with him. She was not aware of his reverse leach system, but was aware of the horizontal well that Tim relied on. She heard rumors about his

7

storage tanks. [Jeanne] never told Tim . . . that [he] could not take water from the spring, she was happy to share. In 2011, . . .[i]t is possible that [Jeanne] told Tim to get a well . . ., when she also listed [her] property for sale briefly. [The parties] had not spoken since.

"The court finds that there was never an express discussion about Tim's use of the water from the spring . . . one way or the other. However, given the open and obvious nature of the use and [Jeanne's] personal experience using the water from the system, . . . [she] was aware of Tim's use of a well and pipe to deliver water from the spring to his property. From 1994 to 2011, or 17 years, no objection was raised. . . . [Jeanne] acquiesced to the use in a way that establishes implied consent. . . . [D]espite the fact that [Jeanne] proposed Tim get a well in 2011, which the court accepts as true for purposes of discussion of the permission element, there appears to have been no unequivocal denial, or withdrawal of permission. . . [b]ecause Tim's use continued for another six years with no further input from [Jeanne] as the two of them did not talk again after this time. There is no reason to believe it would not be continuing to this day if the fire of 2017 had not resulted in [the] destruction" of the water delivery system.

The court concluded that, were it to rule on the question, it would find it was "inequitable to terminate the license," and would grant Tim an irrevocable license "within the same scope" as found for the easement by implication.

### D. Tim's Section 2033.420 Motion for Expenses (Costs of Proof)

Following the resolution of the substantive issues by the trial court and jury, Tim moved for reimbursement of his expenses incurred

8

as a result of Jeanne's denial of his requests for admission (RFAs) regarding whether he held an irrevocable license and easement by implication. (§ 2033.420.) On July 7, 2020 the trial court denied Tim's motion in a written order. This timely appeal ensued. (*Lakin v. Watkins Associated Indus.* (1993) 6 Cal.4th 644, 654-654 [appeal lies from a post judgment order denying attorney fees under former § 2033, subd. (o) [now § 2033.420].)

**DISCUSSION**

**I.    Trial Court Did Not Abuse its Discretion in Denying Badger's Section 2033.420 Motion for Expenses (Costs of Proof)**

**A.    Relevant Facts**

The following four RFAs are at issue on appeal:

"RFA No. 25: Admit that plaintiff Tim Badger holds an irrevocable license to maintain a well located at a spring on YOUR PROPERTY.

"RFA No. 26: Admit that plaintiff Tim Badger holds an irrevocable license to maintain water lines that run from a spring on YOUR PROPERTY to his adjoining lot.

"RFA No. 27: Admit that plaintiff Tim Badger holds an easement by implication to maintain a well located at a spring on YOUR PROPERTY.

"RFA No. 28: Admit that plaintiff Tim Badger holds an easement by implication to maintain water lines that run from a spring on YOUR PROPERTY to his adjoining lot."

Jeanne denied all four RFAs. In response to Form Interrogatory no. 17.1 (requesting information regarding her denials), Jeanne

9

asserted she had granted Tim a revocable license to maintain a well located at the spring and water lines from the spring but had revoked the license after the October 2017 wild fires; Tim had done nothing to convert the revocable license to an irrevocable license; Tim had not expended substantial sums of money in reliance on Jeanne's oral and implied grant of a revocable license; and there was nothing in writing giving Tim an irrevocable license. As to the denials of an easement by implication, Jeanne asserted she was not informed by her parents that they intended to grant an easement in favor of Tim's parcels to use the water from the spring or maintain the water lines located on her property; Tim had no facts or evidence to support his contentions; the installation of the water delivery system was not a permanent construction; and Tim had other available sources of water.

In its written order, the trial court set forth its reasons for denying Tim's section 2033.420 motion for expenses (costs of proof):

"[W]hile the court ultimately concluded [Tim] holds an implied easement, it was not unreasonable for [Jeanne] to have believed that [the] court might find otherwise. As she argues in her opposition, there were a number of facts that were disputed and which needed to be resolved before the court render[ed] a decision. A fact driven analysis based on determining the intent of the parties (and their deceased parents) does not lend itself to an admission from the defendant regarding the ultimate issue the court [was] called upon to decide. The RFAs sought admissions that were necessarily based on reasonably disputed underlying lying facts, and the court finds [Jeanne] is not liable for . . . costs of proof under these circumstances.

10

"As per [Tim's] alternate theory – that he held an irrevocable license – it is true the court determined it was moot. However, it was significant enough of an issue that the court took pains to fully analyze it and reach[ed] the conclusion that [he] would have prevailed under the facts found on this alternative theory. Just as [Jeanne] argues hindsight cannot subject her to costs of proof, [Tim] could not know which theory the court would conclude applied. [He] was prudent to advance an alternative theory of liability, and he still proved that theory, even if the court rested its decision on the implied easement issue.

"That said, the two theories rested on resolution of the same facts. At page 2 of the Statement of Decision issued after the court trial, the court stated: 'All facts summarized in this section are incorporated in and applicable to the court's analysis on the questions of the existence of both an implied easement and irrevocable license.' Consequently, the RFAs seeking [Jeanne's] admissions that [Tim] holds an irrevocable license to the spring and water lines also rested on reasonably disputed underlying facts. Therefore, as found above in relation to RFA nos. 27 & 28 regarding the implied easement, costs of proof are not warranted for RFA nos. 25 & 26 [regarding the irrevocable license]."

## B. Applicable Law and Standard of Review

Our Civil Discovery Act permits a party to propound a RFA asking another party to "admit the genuineness of specified documents, or the truth of specified matters of fact, opinion relating to fact, or application of law to fact." (§ 2033.010.) "If the party fails to admit to the genuineness of any document or the truth of any matter when

11

requested to do so . . ., and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making the proof, including reasonable attorney's fees." (§ 2033.420(a).) "The court shall make this order unless it finds any of the following: . . . [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit." (*Id.*, subd. (b).) [5]

Because "requests for admission are not restricted to facts or documents, but apply to conclusions, opinions, and even legal questions . . . [they] serve to narrow discovery, eliminate undisputed issues, and shift the cost of proving certain matters. As such, the requests for admission mechanism is not a means by which a party obtains

---

[5] "Until 1987, the statute governing cost[s] of proof awards did not explicitly mention an exception where the responding party had a 'reasonable ground to believe that the party would prevail on a matter.' Instead, the statute required the court to find 'there were no good reasons for the denial' before an award could be made. [(Former § 2034, subd. (c), repealed by Stats. 1986, ch. 1334, § 1.)] . . . The 'good reasons' exception was interpreted to incorporate, among other factors, whether 'at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party would prevail on the issue at trial.' [(*Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 511 (*Brooks*).)] The enactment of the Civil Discovery Act of 1986 codified this factor as a separate exception (with some alterations), in addition to the general 'good reason' exception. (Stats. 1986, ch. 1334, § 2; see § 2033.420, subd. (b)(3)-(4).) The *Brooks* formulation continues to inform our interpretation of the statute." (*Orange County Water Dist. v. The Arnold Engineering Co.* (2018) 31 Cal.App.5th 96, 115 fn. 8 (*Orange County Water Dist.*).)

additional information, but rather a dispute-resolution device that eliminates the time and expense of formal proof at trial." (*City of Glendale v. Marcus Cable Associates, LLC* (2015) 235 Cal.App.4th 344, 353-354.)  "The primary purpose of requests for admission is to set at rest triable issues so that they will not have to be tried; they are aimed at expediting trial." (*Brooks*, *supra*, 179 Cal.App.3d at p. 509.)

Appellate courts review orders granting or denying a section 2033.420 motion for expenses (costs of proof) for abuse of discretion. (*Orange County Water Dist.*, *supra*, 31 Cal.App.5th at p. 118, and the cases cited therein.)  "Because the trial court supervises discovery and presides over trial, it is in a much better position to weigh [the relevant] considerations and decide whether, in its discretion, the party who made the denials should be responsible for costs of proof on the issue." (*Id.* at p. 119, citing *People v. Roldan* (2005) 35 Cal.4th 646, 688, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [abuse of discretion standard "reflects the trial court's superior ability to consider and weigh the myriad factors that are relevant to the decision at hand"].)  Hence, "[w]e must review the trial court's decision in light of the applicable legal principles, but it would be inappropriate to simply substitute our judgment for that of the trial court under these circumstances." (*Orange County Water Dist.*, *supra*, at p. 119; see *Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753 [abuse of discretion standard of review "requires us to uphold the trial court's determination, even if we disagree with it, so long as it is reasonable].)

## C. Analysis

As a preliminary matter, Tim relies on comments made by the trial court at the motion hearing which are not relevant to the appeal. We review the correctness of the court's order, and not its reasons, and hence "we will not consider the court's oral comments or use them to undermine the order ultimately entered." (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451.) Because the court was not required to explain its reasons for finding Jeanne's RFA denials reasonable, "it is especially important to refrain from using the court's oral comments as a basis for reversal. In that situation, reviewing the trial court's oral comments would in effect require the trial court . . . to say nothing during argument to avoid creating grounds for impeaching the final order. We decline to place the trial courts in such an untenable position." (*Ibid*.)

Further, we are not persuaded by Tim's recitation of isolated portions of the evidence to determine the reasonableness of Jeanne's RFA denials. The trial court's consideration of the motion based on a party's RFA denials "requires not only an assessment of the substantiality of the evidence for or against the issue known or available to the party, but also the credibility of that evidence, the likelihood that it would be admissible at trial and persuasive to the trier of fact, the relationship of the issue to other issues anticipated to be part of the trial (including the issue's importance), the party's efforts to investigate the issue and obtain further evidence, and the overall state of discovery at the time of the denials and thereafter." (*Orange County Water Dist.*, *supra*, 31 Cal.App.5th at p. 119.) By his arguments, Tim has simply presented "a state of facts, a consideration

14

of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion.  An appellate [court] is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1449.)

There is also no merit to the arguments that the trial court abused its discretion by finding that Jeanne could reasonably believe she might prevail in defending against Tim's claim of the existence of an easement by implication and an irrevocable license.  Before addressing Tim's specific contentions, we set forth a brief explanation of the well-settled law concerning easements by implication and irrevocable licenses.

"An implied easement may arise when, under certain specific circumstances, the law implies an intent on the part of the parties to a property transfer to create or transfer an easement even though there is no written document indicating such an intent." (*Mikels v. Rager* (1991) 232 Cal.App.3d 334, 357.)  Because " '[t]he law does not favor the implication of easements' " (*Kytasty v. Godwin* (1980) 102 Cal.App.3d 762, 769), it can only be made in connection with a conveyance, and whether an easement arises by implication on a conveyance of real property depends on the intent of the parties to the transfer, which must be established by "clear evidence" (*Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 141-142).

"An easement will be implied when, at the time of the conveyance of property, the following conditions exist: 1) the owner of property conveys or transfers a portion of that property to another; 2) the owner's prior existing use of the property was of a nature that the

15

parties must have intended or believed that the use would continue; meaning that the existing use must either have been known to the grantor and the grantee, or have been so obviously and apparently permanent that the parties should have known of the use; and 3) the easement is reasonably necessary to the use and benefit of the quasi-dominant tenement." (*Tusher v. Gabrielsen*, *supra*, 68 Cal.App.4th at p. 141.) While the law "does not require that such easement be absolutely necessary" (*McCarty v. Walton* (1963) 212 Cal.App.2d 39, 43), " ' mere convenience is insufficient' " (*Navarro v. Paulley* (1944) 66 Cal.App.2d 827, 830 (*Navarro*)). " 'The test of necessity is whether the party claiming the right can, at reasonable cost, create a substitute on his own estate.' " (*Ibid*; see *Leonard v. Haydon* (1980) 110 Cal.App.3d 263, 268, 273 (*Leonard*) [the trier of fact may consider whether a party claiming an easement " 'can at a reasonable cost create a substitute on their own property' " as "its use must be more than 'merely convenient' to the alleged dominant tenement"].)[6]

---

[6]    Consequently, there is no merit to Tim's argument that Jeanne's challenge to his entitlement to an easement by implication on the basis he could secure an alternate source of water by drilling a well was a misapplication or mistake of law. In support of his argument, Tim cites to *Fischer v. Hendler* (1942) 49 Cal.App.2d 319 (*Fischer*). However, *Fischer* does not purport to hold that a court determining the element of reasonable necessity may not consider as a factor whether the party claiming the easement " 'can, at reasonable cost, create a substitute on his own estate.' " (*Navarro*, *supra*, 66 Cal.App.2d at p. 830; see *Leonard, supra*, 110 Cal.App.3d at pp. 266-267, 274 [upholding jury determination that the defendants had not acquired implied easement in driveway located on the plaintiffs' adjoining property where evidence showed the plaintiffs' predecessors in interest had offered the use of driveway as a matter of convenience and an alternate driveway could be built entirely on the defendants' property]; *Navarro, supra*, at p. 830 [substantial evidence supported trial court's finding that the defendant

" 'A license gives authority to a licensee to perform an act or acts on the property of another pursuant to the express or implied permission of the owner.' [Citation.] 'A licensor generally can revoke a license at any time without excuse or without consideration to the licensee. . . .' " (*Richardson v. Franc* (2015) 233 Cal.App.4th 744, 751 (*Richardson*).) "Nonetheless, '[an] otherwise revocable license becomes irrevocable when the licensee, acting in reasonable reliance either on the licensor's representations or on the terms of the license, makes substantial expenditures of money or labor in the execution of the license, and the license will continue "for so long a time as the nature of it calls for." ' " (*Gamerberg v. 3000 E. 11th St., LLC* (2020) 44 Cal.App.5th 424, 430.)

This principle is grounded upon " 'the doctrine of equitable estoppel; the license, similar in its essentials of an easement, is declared to be irrevocable to prevent the licensor from perpetrating a fraud upon the licensee.' [Citations.] '[C]ourts may exercise their power to declare a license irrevocable only if the expenditures are "substantial," "considerable" or "great," ' a requirement that ensures 'courts use their power to create irrevocable licenses sparingly.' [Citation.] ' " A license remains irrevocable for a period sufficient to enable the licensee to capitalize on his . . . investment. He can continue

had not acquired an easement by implication for the maintenance of a garage on the plaintiff's property where garage could be moved from its location straddling the boundary line to a location entirely within the defendant's property without any great hardship].) The fact that the trial court here found Jeanne's evidence regarding Tim's ability to secure other sources of water was not sufficient to deny him an easement by implication does not call into question the reasonableness of her RFA denials.

17

to use it only as long as justice and equity require its use." ' "
(*Gamerberg v. 3000 E. 11th St., LLC, supra,* 44 Cal.App.5th at p. 430.)

Tim contends Jeanne could have no reasonable belief she would prevail at trial on the issues of the existence of an easement by implication or an irrevocable license because she was aware of evidence showing that all elements of those property interests were present. However, Jeanne was under no obligation to admit to the RFAs simply because she was aware of facts in support of the recognition of such property interests. "The fact that matters denied were subsequently proved by uncontradicted evidence, if true, does not make [Jeanne's RFA denials] unreasonable per se, *in retrospect.* The difference between an admission and a denial is measured by the burden of proof involving in sustaining the affirmative of the issues as to which admissions were requested." (*Haseltine v. Haseltine* (1962) 203 Cal.App.2d 48, 61, italics added.)

Here, Tim had the burden of proving to the satisfaction of the trier of fact that he was entitled to the requested property interests. Because the existence of an easement by implication and an irrevocable license were not dependent on written documents, the trial court was tasked with resolving the parties' dispute based on the inferences to be drawn from testimonial evidence (including conflicting statements) as well as the historical circumstances of the parties' conduct both before and after the purported creation of the easement or license. An easement by implication and an irrevocable license are not granted by a trial court as a matter of legal right but as an exercise of its discretionary authority after a consideration of all the circumstances. (See *Richardson*, *supra*, 233 Cal.App.4th at p. 751 [whether a license is

18

irrevocable is a question of fact and its grant is "based in equity"]; *Leonard, supra*, 110 Cal.App.3d at p. 274 ["whether an easement by implication arose is a question of fact for the determination of the trier of fact in the trial court"; "a subsidiary question of fact is whether the claimed easement is reasonably necessary"]; *Slater v. Shell Oil Co.* (1940) 39 Cal.App.2d 535, 543 [whether plaintiff by her conduct granted an easement by implication to defendant to maintain its pipe line on her property was a question of fact for the trial court].)

Also, in determining whether Tim was entitled to expenses (costs of proof) based on Jeanne's RFA denials, the trial court could reasonably consider the relationship of the issues sought to be admitted (existence of easement by implication and an irrevocable license) to other issues anticipated to be part of the trial. Here, the resolution of whether Tim held an easement by implication or an irrevocable license was inextricably intertwined with the related issue of the physical scope of the claimed easement or license. (See *Richardson supra*, 233 Cal.App.4th at pp. 757-759 [physical scope of an irrevocable license is to be determined within the court's equity jurisdiction]; *Fristoe v. Drapeau* (1950) 35 Cal.2d 5, 8, 9 [in determining the existence of an easement by implication, the court is to consider Civ. Code, § 1104 [defines creation of easements by implied grant], which must be read together with Civ. Code, § 806 [defines "the extent" of the servitude by "the nature of the enjoyment by which it was acquired"] and "the common law" rules governing easements by implication].)

Thus, even assuming Jeanne admitted the truth of the RFAs, such admissions would not have limited the evidence to be presented at trial in any substantial manner. The trial court would have still been

tasked with resolving the extent or scope of the claimed easement or license based on the same evidence regarding the existence of those property interests, namely, the intentions of Joseph and Lillian at the time of their parcel transfers to the children in 1989, Lillian's intention at the time of her parcel transfers to the children in 1994, and the conduct of Tim and Jeanne both before and after the creation of the easement or license.

For the reasons stated above, we affirm. [7]

## DISPOSITION

The July 7, 2020 order denying plaintiff Tim Badger's motion for expenses (costs of proof) pursuant to Code of Civil Procedure section 2033.420 is affirmed. Costs on appeal are awarded to defendant and respondent Jeanne Terribilini.

---

[7] In light of our determination we do not address the parties' other contentions.

20

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Fujisaki, J.

_Badger v. Terribilini/A161178_